UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

NOV - 2 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

GILBERT BLAND    (Pro-Se)        :
4725 Dorsey Hall Dr., A504
Ellicott City, MD 21042          :
(410) 300-6502
                    Plaintiff,

            -vs-                 :

SECRETARY OF THE ARMY            :
The Pentagon
Room 3C718                       :
Washington, DC 20310
                    Defendant    :

CASE NUMBER  1:05CV02143

JUDGE: Henry H. Kennedy

DECK TYPE: Administrative Agency Rev

DATE STAMP: 11/02/2005

COMPLAINT FOR MANDATORY
DECLARATORY AND INJUNCTIVE RELIEF

1. Plaintiff seeks declaratory and injunctive relief relating to the less than Honorable Discharge issued to him by defendant. Plaintiff challenges the characterization of his Undesirable Discharge on the ground that it violates Article 38 of the Uniform Code of Military Justice (U.C.M.J.), 10 U.S.C. § 838, and the Fifth and Sixth Amendments of the United States Constitution. Plaintiff was denied the effective assistance of counsel. Additionally, plaintiff challenges the validity of the character of his discharge on the ground that he was discharged without observance of procedures required by Army regulations. Contrary to these regulations, plaintiff was coerced to request to be separated from service and that request was not knowing, intelligent or voluntary.

JURISDICTION

2. This cause of action arises under Article 38 of the Uniform Code of Military Justice, 10 U.S.C. § 838, 10 U.S.C. §§ 1552, 1553 and the Fifth and Sixth Amendments to the United States Constitution, Section 10(e) of the Administrative Procedure Act, 5 U.S.C. §706(2) and Chapter 10 of Army Regulation 635-200. Jurisdiction of this court is provided by 28 U.S.C. §§ 1331(a) and 1361. Declaratory relief is sought pursuant to 28 U.S.C. § 2201, 2202. There is presently an actual controversy between the parties in which a declaration of rights is sought and needed. Venue is properly in this court by virtue of 28 U.S.C. § 1391(e).

PARTIES

3. Plaintiff in this action, GILBERT BLAND, is a former private first class in the United States Army. He is a citizen of the United States of America, and currently resides at 4725 Dorsey Hall Dr., A504, Ellicott City, Maryland 21042.


4. Defendant, Secretary of the Army is sued here in his official capacity. His official place of business is Room 3C718 of the Pentagon, Washington DC 20310. Defendant is responsible

2

for and has the authority necessary to conduct all affairs of the
Department of the Army, including the governance of the
separation of all military personnel from the United States Army.
10 U.S.C. § 3012 (1962). He is empowered to act through a board
of civilians to change any military record of a member or former
member of the Army whenever necessary to correct an error or to
remove an injustice. 10 U.S.C. § 1552. In addition, pursuant to
10 U.S.C. § 1553, he has established a Discharge Review Board to
reconsider the character of a service member's discharge from the
Army, subject to further review by him.

THE CIRCUMSTANCES LEADING TO

PLAINTIFF'S LESS THAN HONORABLE DISCHARGE

5. On June 28th, 1968, the plaintiff, GILBERT BLAND,
enlisted in the United States Army for a term of three (3) years.
In 1969, the plaintiff was sent to the Republic of Viet Nam,
where he served as a courier, truck driver, communications
specialist, perimeter guard and military policeman for a complete
tour of duty (one year).

6. When the plaintiff returned to the continental United
States (CONUS), about April 5th 1970, he was suffering from the
effects of Post Traumatic Stress Disorder (PTSD) and major
depression, both untreated.

7. Plaintiff was assigned to the 24th Infantry Division (1st
of the fourth) at Fort Riley, Kansas. The plaintiff was at this

3

assigned duty station at Fort Riley, Kansas for 18 days, from May 4th 1970 to May 22nd 1970.

8. About October 20, 1970, Plaintiff was arrested and transported to the "Special Processing Detachment" (later called Personnel Control Facility or "PCF") at Fort Dix, New Jersey, for "processing."

9. Plaintiff remained at the above mentioned "special processing detachment," Ft. Dix, from October 20th, until November 11th. During that time, no medical care was provided for his PTSD or major depression.

10. On November 11th the plaintiff returned to this "PCF" at Fort Dix in order to seek assistance for his medical problems. He sought assistance at the Walter Reed Army Hospital at Fort Dix and was prescribed Librium by the emergency room physician and returned to his unit.

11. About July 6th 1971 the plaintiff was arrested and returned to the "PCF" at Fort Dix, New Jersey. On August 10th 1971, he was detailed with a group of soldiers to a classroom wherein Captain Z. Cowart, JAGC, provided waiver forms and advised how they should be completed, and that if he did not "resign" the consequences of failing to do so[1]. At no time did Plaintiff receive *individual* legal counseling with respect to the (AWOL) charges against him or possible defenses. Plaintiff's army counsel did nothing to make the command aware of the plaintiff's

---

[1] He would be court martialed; and if convicted he would have a federal "record," could be imprisoned and receive a "dishonorable discharge."

4

military service, or it's possible connection to the (AWOL) allegations against him, and they were in fact ignorant of plaintiff's Viet Nam war service as evidenced by the first DD-214 (report of separation) issued which failed to reflect any service at all except as a "trainee." Cpt. Cowart failed to submit any statements to the command in mitigation.

12. The charge sheet[2] which served as the basis for the "Request for Discharge" indicates that the charges were not referred to any military court[3]. Despite this, Captain Cowart allowed his client to request a Chapter 10 discharge under the threat of receiving a "Bad Conduct" or "Dishonorable" discharge neither of which could have been issued, under the circumstances.

13. Upon his military counsel's advice, on August 10, 1971, plaintiff requested that he be discharged pursuant to Chapter 10, AR 635-200, in lieu of trial by court-martial.

14. Plaintiff was discharged on August 31, 1971 as "undesirable."

15. Plaintiff desired to remain in the United States Army, receive medical treatment for his illnesses, and continue to serve the rest of his enlistment. If he had known that he could not legally have been issued a stigmatizing Discharge as a result of the administrative action instituted against him, he would not have resigned, or requested that he be discharged.

---

[2] Copy attached.
[3] Military Courts are designated as Summary, Special and General Courts.

5

16.  The advice of counsel described in paragraph 11 above
was incorrect as a matter of law in the following three
respects: (1) the administrative proceeding instituted against
plaintiff did not specify the type of court martial[4] he was to
receive. Page two of the "Charge Sheet[5]" states "Referred for
trial to the _____court martial…" without specifying
whether it was to a General, Special, or Summary court, or to
provide a court number designation. Without designating the *type*
of Court to which the charges were being referred, if in fact
they were being referred, at all, the Army was not authorized to
either discharge plaintiff from the Army or issue plaintiff a
Bad Conduct or Dishonorable Discharge[6]. (2) In a document signed
by LTC George N. Cook, regarding the court martial charges, the
plaintiff's commanding officer, LTC Cook recommended the
plaintiff's "retention in Military Service," and (3) since AR
635-200, Chapter 10 authorizes a discharge in lieu of court-
martial only in circumstances in which the court-martial
proceeding against the accused could potentially lead to a Bad
Conduct or Dishonorable Discharge, plaintiff could not legally

---

[4] AR 27-10; Sect. 5–18. Referral of charges *(a)*. The convening authority will personally determine whether to refer the charges for trial and the kind of court to which the charges will be referred. This function may not be delegated.

[5] Copy attached

[6] AR 635-200 Chap, 10-1 (1) The provisions of RCM 1003(d), MCM 2002 do not apply to requests for discharge per this chapter unless the case has been referred to a court-martial authorized to adjudge a punitive discharge.

request, and the Army could not legally grant a request for discharge in lieu of courtmartial.

17. Plaintiff's military counsel, Cpt. Z. Cowart, was ineffective because he; failed to read the charge sheet used as a basis for the eventual request for discharge for the good of the service and request that the charges be properly referred to a court, any court; failed to ascertain the most basic and vital information about his client (e.g. that he had served a complete tour of duty in Viet Nam, had been decorated, and had recently returned from that conflict); allowed the plaintiff to be coerced into signing the waiver during the denial of medical treatment for his service connected illnesses while he was unable to comprehend what was taking place; and he failed to submit a statement in mitigation of the alleged offense (AWOL).

18. Plaintiff had denied, and continues to deny the allegation that he ever committed the offense of being absent without leave (AWOL). He requested to be discharged for the good of the service because of the poor counsel he received, because of the stark conditions at the Ft. Dix PCF, because he was sick, and because there appeared no hope of receiving the help he needed.

PLAINTIFF'S EXHAUSTION OF ADMINISTRATIVE REMEDIES

19. On May 24th, 1974 the Army Discharge Review Board denied

7

the plaintiff's application to upgrade his discharge.

20.  On April 12th, 1977 the plaintiff applied to have his discharge upgraded under the Special Discharge Review Program ("SDRP"). On June 8th 1977, the "SDRP" upgraded the plaintiff's discharge to "under honorable conditions." Subsequent to this "upgrade" congress passed P.L. 95-126 which required the military departments to conduct a hearing to determine if these (SDRP) upgrades should be affirmed. In the case of those that are not affirmed, as is the case with the plaintiff, the Veterans Administration ("V.A.") is required to *retroactively* deny any "gratuitous" benefits, such as educational benefits, service connection for disabilities, pensions, etc., making such "SDRP" upgraded discharges, in effect, worthless.

21. On October 25th, 1978 the Army Discharge Review Board denied plaintiff's application to affirm the "SDRP" upgrade of his discharge. In decisional document AD7X006750A, Sect. J, in answer to the question "Charge Sheet present and correct." The indication is a large question mark. Similarly, in response to the question "Offense charged, punishable by a "punitive discharge" the response is a large question mark. The Army discharge review board, in this decision, has failed to find that the Army did not follow it's own regulations in properly referring the AWOL charges to a court with the capability of imposing a "punitive discharge." It must be assumed that the Army

8

Discharge Review Board had before it the charge sheet which was the basis for the plaintiff's discharge, showing that no court (summary, special, or general) was designated to hear the (AWOL) charges. Failing to hold the Army to the requirements of AR-635-200 and the MCM was arbitrary and capricious and not in accordance with the law. Part IV, Sect. A of the said decisional document further misstates whether the plaintiff's separation physical mentioned his illness whereas in fact the separation physical indicates several psychological problems, all indicative of his actual PTSD and major depression. This misstatement of facts was used in denying this application for an upgrade to his discharge and is an arbitrary and capricious action.

22. On August 27th 1980, the Board for Correction of Military Records denied the plaintiff's request for an upgrade of his discharge in decisional document AC75-01569A. The board refused to consider the plaintiff's request at that time, stating, in it's "Determination:" that "The applicant has failed to submit sufficient relevant evidence to demonstrate the existence of probable material error or injustice to warrant a formal hearing" and none was conducted. One of the issues the plaintiff sought to raise before the said BCMR was the ineffective assistance of counsel which has now become more apparent. On page 2 of the decisional document the board states that "the appl in effect pleaded guilty to very serious charges

9

which could have resulted in his receiving a punitive disch."
Nothing could be further from the truth. The plaintiff _never_
(emphasis added) pled guilty to any offense that was used by the
Army as the basis of his discharge. And because the (AWOL) charge
was never referred to a court martial capable of issuing a
"punitive discharge" the foundation for this ABCMR denial of
relief is shown to be arbitrary, capricious and not based upon
law or facts. The same document states that "He was found fit for
sep on 9 Jul 71 after undergoing a complete physical and mental
checkup[7]." Even that document indicates several areas of concern
by the physician performing the physical, and, while PTSD was not
known as such at the time[8], the VA and civilian doctors have all
stated their belief that the plaintiff was, in fact, suffering
from the effects of PTSD and major depression during the pendency
of the administrative separation proceedings. It is not clear to
the plaintiff whether the Army continues to administratively
separate it's soldiers suffering from PTSD with stigmatizing
discharges, or if they are instead treated for their illnesses.

23. On August 9th, 1982, the Army Discharge Review Board
denied plaintiff's application for a rehearing in a "Discharge
Review OSA 172" proceeding.

---

[7] Whether a "mental checkup" was in fact performed is contradicted in a later Army Discharge Review
Board Decisional Document No. AD 7X-006750A (Aug 9, 1982) p2: 1, D. -- "FINDING:...no NP/MSE
was conducted." (Neuro Phsychiatric/Mental Status Evaluation)
[8] Although a similar disorder was known as "Vietnam Syndrome"

10

24. On June 20th, 1982, plaintiff applied again to have the Army Discharge Review Board review his discharge, citing, among other issues, the legal inability of the separating command to issue a punitive discharge. In a document issued on August 9th 1982 in response, the Army Discharge Review Board ignored this issue, stating that it had now "lost" the plaintiff's military records.

25. On December 23rd, 1982, the Army Discharge Review Board again reviewed the plaintiff's discharge and again refused to correct it. Noteworthy in this review is the statement on page two that "The individual's official military personnel file cannot be located, so it cannot be determined if other contentions were submitted." It appears that the Army conducted an administrative appeal process without any records upon which to base it's denial. Absent a record upon which to base such a denial, it would appear that this denial, too, must be deemed arbitrary and capricious and not based upon facts as the facts were lost at the time the decision was being made.

26. In a final review by the Army Discharge Review Board dated January 21, 1983, the Army again denied the plaintiff relief stating "Finally, the board concluded that whether command was aware of the positive aspects of his service, or not[9], that

---

[9] Command was certainly NOT aware of the positive aspects of his service as reflected in the report of separation (DD214) which lists the plaintiff as a "trainee" with no service in Viet Nam.

11

the characterization of his service as under other that
(sic)honorable conditions would have remained the same because of
the seriousness and *repetitive nature* of his indisciplines..." Even
though the separating command was not aware, nor interested in
learning about his prior service, or physical and psychological
disabilities, the plaintiff was being denied relief by the ADRB
based on what he would probably have done in the future. The
Army, here, admits that their decisions may, or may not have been
based upon fact (plaintiff's service) both when deciding how to
proceed against him administratively in discharging him, and then
upon review when confronted with the possibility that the
discharge was illegal, and unjust. This, is arbitrary and
capricious action, and admittedly not based upon fact.

27. Again on August 31, 2000, the Army Board for Correction
of Military Records, following an application by the plaintiff
for a review, denied the plaintiff relief. The Army's continued
response is that the plaintiff, after consulting with legal
counsel, voluntarily requested a discharge for the good of the
service. Again, the plaintiff, at the time of the discharge
proceedings, was suffering from, and continues to suffer from,
the effects of PTSD incurred during combat in Viet Nam, and major
depression. His legal counsel was of no effect, and urged him to
request a discharge, against his interests and in violation of

12

Army regulations[10]. Plaintiff was incapable of comprehending what
was taking place and would have signed anything to end his
suffering. On page three of the Aug. 31, 2000 ABCMR decisional
document[11] the ABCMR at paragraph 5 states that "Army Regulation
635-200 sets forth the basic authority for the separation of
enlisted personnel." The paragraph goes on to state "The request
may be submitted at any time after charges have been preferred
and must include the individual's admission of guilt." (emphasis
added) Since there was never an admission of guilt on the part of
the plaintiff to the charge underlying his administrative
separation, nor will there ever be, the Army is misstating the
facts of the case in order to continue to deny the plaintiff
relief. This misstatement of fact, that the plaintiff ever
admitted guilt to any charge, is an arbitrary and capricious
denial and is not based on fact.

This decision also cites AR 635-40 in supporting the
contention that the plaintiff *could not* have been referred for
separation due to his disabilities. In fact, Chap. 4-3 of AR 635-
40 provides in pertinent part that "4-3. Enlisted soldiers
subject to administrative separation *a*. Except as provided below,
an enlisted soldier may not be referred for, or continue,
physical disability processing when action has been started under
any regulatory provision which authorizes a characterization of

---

[10] Chapter 10, AR 635-200
[11] AR2000041584

service of under other than honorable conditions. *b.* If the case comes within the limitations above, the commander exercising general court-martial jurisdiction over the soldier may abate the administrative separation. This authority may not be delegated. A copy of the decision, signed by the general court-martial convening authority (GCMCA), must be forwarded with the disability case file to the PEB. A case file may be referred in this way if the GCMCA finds the following: (1) *The disability is the cause, or a substantial contributing cause, of the misconduct that might result in a discharge under other than honorable conditions.* While being treated at the Baltimore, MD Veteran's Administration Medical Center for PTSD in August of 2003, the doctors there in a report stated that "The current clinical and psychometric assessment of the veteran's Posttraumatic Stress Disorder *clearly* had it's origins during his tour of duty in Vietnam and was exacerbated by circumstances subsequent to his return stateside as documented in the above military history." The report goes on to state at page 17 that "This factor (PTSD) adversely affected his ability to go on serving honorably. It is compelling evidence which, in accordance with 38 C.F.R. 3.12, mitigate the veteran's periods of prolonged absence and warrant an upgrade in the character of his discharge to fully honorable." So the regulation cited by the ABCMR in denying *this* application for a discharge upgrade fails to include in it's language the provision that if the disability is the cause, *or a substantial*

14

*contributing cause*, the plaintiff could have been referred for a disability separation as opposed to a punitive, and stigmatizing one. Since the ABCMR did not have access to the VA report dated August 13, 2003 then, but it did in it's later consideration of September 2004, and continued to rely on this 2000 decision in support of it's final denial, it is mentioned here as yet another example of the defendant's arbitrary, capricious, and non factual series of denials.

28. The final denial of relief by the Army Board for the Correction of Military Records ("ABCMR") occurred on September 14th, 2004. That decision was arbitrary, capricious, an abuse of discretion and contrary to law. On page 3 of the decisional document[12] at paragraph 3 the board finds that "There is no record which shows the applicant had a history of PTSD." While the official diagnosis of PTSD was not recognized by the psychiatric establishment through it's Diagnostic and Statistical Manual of Mental Disorders (DSM-III) 1980, until nine years after the plaintiff was discharged by the Army, this diagnosis is uncontroverted by the doctors at the V.A. and by civilian psychiatrists as well. It is also dated back to the plaintiff's service during the Viet Nam War. To purposely ignore and discount this fact is an arbitrary and capricious abuse of discretion and contrary to facts. Moreover, the ABCMR itself acknowledged this

---

[12] ABCMR Record of Proceeding ARAR2003095266

15

diagnosis in it's August 31, 2000 denial document[13] stating on
page 4 that "On December 28[th] 1999, the applicant was diagnosed
with major depression, recurrent, currently stabilized and PTSD."
This is in direct contradiction to this 2004 denial.

On page 4 of the Sept. 2004 ABCMR decision denying relief,
the ABCMR states that "1. The evidence of record shows the
decision in White v. Secretary of the Army[14] does not apply to
soldiers separated under the provisions of Chapter 10, Army
Regulation 635-200, in lieu of trial by court-martial. White v.
Secretary of the Army applies to soldiers who are court-
martialed, the decision in White v. Secretary of the Army does
not apply in this case." Of course, any reading of the White case
would show this statement to be wildly false and incorrect. Mr.
White's case is exactly the same as here. Mr. White, facing the
prospect of a court martial which could not legally adjudicate a
punitive discharge, and with ineffective legal counsel, requested
a discharge for the good of the service in lieu of trial by court
martial. He was not court martialed. It is here that the
defendant misstates the law in support of their decision to deny
relief, intentionally, or unintentionally, but nevertheless the
White case does indeed apply to Chapter 10 discharges -
resignations in lieu of court martial. This will be explored
later in plaintiff's memoranda of law in support of his action.

---

[13] AR2000041584
[14] 878 F.2d 501 (D.C. Cir. 1989)

Similarly, in it's Sept. 2004 decision, the ABCMR states that "The evidence of record does not support the applicant's contention that his attorney erred in advising him of his rights." The most basic error committed by his military lawyer was a failure to *read* the charging document and notice that the charges were not referred to any court. This could have happened by mistake on the part of the separating command, or a trick to get the plaintiff to waive his rights and agree to an administrative discharge, when none could be justified. In any event this constitutes material and prejudicial error during the discharge proceedings, one that should have been picked up by his Army counsel, and it is in fact in the record.

On page 4, para. 5, the ABCMR states that "Although the VA related his PTSD to his Viet Nam service, there is no indication in his military records that he was suffering from PTSD at the time of his discharge from the military or that it was the reason for his misconduct." Again, PTSD was not recognized until 1980. The VA has determined that PTSD can be the result of war experiences and the sequence of events here puts the plaintiff's tour of duty in Viet Nam before his discharge in 1971. Since there was no treatment/cure upon returning to the U.S. *before* he was discharged, it is illogical to make a statement such as the one made by the defendant in it's final denial of relief. Further, the doctors at the VA have already stated their

17

diagnosis of PTSD which developed during the plaintiff's tour of
duty in Viet Nam, in 1969-1970. Again showing arbitrary and
capricious action on the part of the defendant in the
administrative remedy process.

### INJURY TO PLAINTIFF

29. Plaintiff has suffered and continues to suffer
serious and irreparable injury because his less than Honorable
Discharge stigmatizes him, adversely affects his reputation
and standing in the community, causes him embarrassment and
loss of self-esteem, engenders substantial prejudice against
him, and impairs his social and economic opportunities in
civilian life. In addition, the plaintiff has been and
continues to be denied the help, assistance and medical care
he needs from the Veteran's Administration due to the
characterization of his discharge.

30. Plaintiff is without an adequate remedy at law.

### FIRST CLAIM

31. By erroneously advising plaintiff that the charge of
AWOL could result in a Bad Conduct or Dishonorable Discharge
under the circumstances, and by failing to inform himself of

18

the most rudimentary aspects of his client's service record
and medical disabilities, and by not reading the charge sheet
for accuracy and completeness, plaintiff did not receive
effective assistance of counsel, in violation of Article 38 of
the Uniform Code of Military Justice, 10 U.S.C. § 838, Army
Regulation 635-200, Chapter 10, and the Fifth and Sixth
Amendments to the United States Constitution.

SECOND CLAIM

32. The approval by the commander of plaintiff's request
for a discharge in lieu of court-martial and defendant's
issuance of a Discharge Under Other Than Honorable Conditions
to plaintiff violated Army Regulation 635-200, Chapter 10 and
the Fifth Amendment to the U.S. Constitution in that
plaintiff's request for a discharge in lieu of court-martial
was coerced, was the result of; improper counseling, complete
lack of medical treatment for plaintiff's illnesses during the
proceedings, inhumane conditions at "PCF" Ft. Dix, and was not
authorized because the charges against plaintiff were never
referred to a court with the authority to issue a punitive
discharge. Even if the charges were properly referred to a
court, no court other than a general court could have issued a
dishonorable discharge, which action the plaintiff was
threatened with.

19

## THIRD CLAIM

33. The refusals of the Army Discharge Review Board and the Board for Correction of Military Records to recharacterize plaintiff's discharge were arbitrary, capricious, not based on law, or fact and were unlawful under the Administrative Procedure Act, 5 U.S.C. § 706(2), and violated plaintiff's rights guaranteed by 10 U.S.C. §§ 1552, and the Fifth Amendment to the U.S. Constitution.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that this Court grant the following relief:

1. Declare that the administrative discharge proceedings conducted by the defendant against the plaintiff in 1971 and the resultant discharge, as well as the discharge plaintiff currently holds are illegal and void; and

2. Declare that by issuing plaintiff a less than Honorable Discharge, defendant violated plaintiff's rights guaranteed by Article 38 of the Uniform Code of Military Justice, 10 U.S.C. § 838, Army Regulations 635-200, Chapter 10 and the Fifth and Sixth Amendments to the Constitution; and

3. Declare that defendant's refusal to recharacterize plaintiff's discharge upon application to a Discharge Review Board for Correction of Military Records violated plaintiff's

20

rights under the Administrative Procedure Act, 5 U.S.C. §
706(2), 10 U.S.2. § 1552, 1553, and the Fifth Amendment; and

4. Order that the defendant reinstate the plaintiff
to the position he formerly held prior to the institution
of the administrative proceedings against him, or,
*alternatively* order the defendant to issue the plaintiff
an honorable discharge effective as of the date he was
originally discharged; and

5. Award plaintiff his costs and fees of this action, and
for attorneys fees, should one be employed, in the prosecution
of this action; and

6. Such other and further relief as the court may deem
just and appropriate in the cause.

RESPECTFULLY SUBMITTED,

GILBERT BLAND, PRO-SE
4725 DORSEY HALL DR.
A504
ELLICOtt CITY, MD 21042
(410) 300-6502

21