UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

GILBERT BLAND (Pro-Se):　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　　　　　Plaintiff,　　)
　　　　　　　　　　　　　　　　)
　　　　-vs- :　　　　　　　　　　)　　　　CIVIL ACTION NO. 05-2143 (HHK)
　　　　　　　　　　　　　　　　)
SECRETARY OF THE ARMY:　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　　　　Defendant.　　)
_____)

**OPPOSITION TO "DEFENDANT'S MOTION TO DISMISS
IN PART, AND FOR SUMMARY JUDGEMENT"**

Preliminary Statement

Plaintiff, in Proper Person, files this memorandum in opposition to defendant's motion to dismiss this action and for summary judgment. Essentially, this is an action seeking equitable relief from the Army Board for Correction of Military Records (ABCMR) decision rendered on September 14th, 2004. Defendant's response is that the Court does not have subject matter jurisdiction over plaintiff's claim for relief under Mandamus. The plaintiff will show that the Court does indeed have jurisdiction under the Mandamus Act, and that any relief available under the Administrative Procedure Act (APA) is not complete and does not preclude the Court from forming suitable relief under Mandamus. Defendant further argues that this is an action appealing the Army Discharge Review Board's decision of 1978 and 1983 and the 1980 decision of the ABCMR[1] and that as a result, this action is barred by the six-year stature of limitations. The argument that the six-year statute of limitations set forth in 28 U.S.C. § 2401(a) bars this action because it was brought more

_____

[1] Def. Memorandum of Points and Authorities…p.3, para 2

than six years from the date of the plaintiff's separation from military service will be shown <u>not</u> to apply to actions such as this.

As we show below, defendant's motion is without merit because, as numerous courts have held, 28 U.S.C. § 2401(a) does not apply to corrective actions like this one brought against officials of the United States to set aside the stigma of a less than honorable discharge designation. Even if 28 U.S.C. § 2401(a) applies to such corrective actions, the government's position that the six years begins to run from the *date of separation* to obtain a review of discharge by a Discharge Review Board is inconsistent with federal law (10 U.S.C. § 1553), which mandates that a veteran shall have 15 years from the date of separation to obtain a review of discharge by a Discharge Review Board ("DRB"). Since the Plaintiff sought and received a review of his discharge based upon newly discovered evidence in 2003, and the ABCMR's final decision in 2004, his 2005 action is well within the limits of 28 U.S.C. § 2401(a).

Defendant further argues that plaintiff's claims are "nonjusticiable"[2] as the resolution which may be accorded by the Court would have an impact on the Army's "manning and composition of the force" as well as "personnel administration matters." Two responses to this present themselves. First, as a general rule, courts have held that when a service member's discharge is held to have been issued illegally, or improperly, it is of no effect and the person is still in the military. Second, adjusting the discharge status of a former member of the armed services is not the sort of decision so imbued with national security concerns as to require bypassing regular review procedures. The basic decision by Congress to place discharge correction decisions outside the military chain of command and in the

---

[2] Def. Memorandum of Points and Authorities…p.3, para 3

hands of civilians ... further suggests that they are not the sort of military decisions that are vital to national security, as has been suggested here by the defendant.

The defendant further states that the plaintiff "cannot demonstrate that the ABCMR's decisions were arbitrary, capricious, or contrary to law" and that as a result "the Court should enter judgment in favor of the defendant."[3] The plaintiff will show the court that the decisions of the defendant have been and are now arbitrary, capricious and contrary to law. Further, the pleadings herein will show that the defendant violated plaintiff's rights guaranteed under the 5th and 6th Amendments to the Constitution, as well as the Uniform Code of Military Justice. The plaintiff will introduce evidence at trial in the form of witnesses' testimony that will show that the Army denied plaintiff "effective assistance of counsel" at a time when such assistance was mandated by military law, and the Constitution. A material fact in controversy is whether marching the plaintiff and eighteen of his "defense counsel's" other clients into a classroom and in twenty minutes pointing to a poster on the wall describing military and veteran's benefits flowing from the five types of discharges and then indicating where on a waiver form his signature will go constitutes "effective assistance of counsel" as required by law[4]. Another material fact in controversy is whether preferring charges against the plaintiff and then not referring them to a court but threatening the plaintiff with prison and a dishonorable discharge unless he waives his right to a trial on the charge violates due process. To be sure, this is not the way the defendant does things today. No trickery is allowed in the referral or non-referral of charges in order to get a service member to waive his rights and seek a stigmatizing discharge. Today, under the regulation (AR 635-200 Ch. 10) the charges *must be* referred[5].

---

[3] Def. Memorandum of Points and Authorities…p.4, para 2
[4] See AR 201 Affidavit of Gilbert A. Bland
[5] 10–1. General a. A soldier who has committed an offense or offenses, the punishment for which under the UCMJ and the Manual for Courts-Martial, 2002 (MCM 2002), includes a bad conduct or dishonorable discharge, may submit a request for discharge in lieu of trial by court-martial.(1) The provisions of RCM

Another material fact in question is whether withholding medical attention while subjecting the plaintiff to such an "assembly line" legal process geared at removing the Army's perceived "undesirables" constitutes illegal *coercion.* The defendant acknowledges that the plaintiff developed the psychiatric disorder known as Post Traumatic Stress Disorder ("PTSD") while serving in Viet Nam, in fact the pleadings on file show that this is the plaintiff's current diagnosis. Testimony at trial will show that he was suffering from the effects of PTSD during the process resulting in his stigmatizing discharge and that this was untreated. Medical testimony at trial will also show that the weight loss suffered by the plaintiff in Viet Nam, was not due to Bacterial Enterocolitis, as the defendant has suggested, but is in fact a classic symptom of Major Depression (a component of PTSD) which was also developed by the plaintiff in Viet Nam and similarly untreated by the defendant.

The defendant finally states that the plaintiff has received "all appropriate process in connection with his discharge" and that his characterization of service was "appropriate" and the court should grant judgment in favor of the defendant.[6] If it is "appropriate" to take a 19-year-old soldier suffering from two psychiatric disorders and then subject him to an administrative process geared at compounding the damage of war with a life-long stigmatizing discharge while providing no counsel or medical treatment during the process, then the process was indeed appropriate and this case *should* be dismissed. The defendant can't rely on "we didn't know about these disorders in 1970" because he has persisted in his failure to acknowledge the injustice, as late as September of 2004."

And if "all appropriate process" means the discharge process *and* the subsequent reviews he has conducted, the plaintiff will show that these proceedings

---

1003(d), MCM 2002 do not apply to requests for discharge per this chapter unless the case has been referred to a court-martial authorized to adjudge a punitive discharge.

[6] Def. Memorandum of Points and Authorities…p.4, para 3

were not conducted on any facts that pertained to the plaintiff. Plaintiff will show below that during the original separation proceeding, the command did not have any idea of who the plaintiff was, beside his name, rank and social security number. The fact that the defendant did not have the plaintiff's military records at this crucial time in order to fairly decide the type of discharge he should receive, did not stop him. And later, during the reviews conducted by the defendant, again, while stating on the record that the boards were using the plaintiff's military records in order to reach a just decision, they *never had* his military service records. The review boards, while they themselves never had plaintiffs complete military records, offer such excuses as "there is nothing to indicate that the separating command was not aware of the nature of the applicant's service." Nothing except their report of separation (DD-214) listing the plaintiff as a "trainee" with <u>no</u> service in Viet Nam, and <u>no</u> medals, decorations, commendations, badges, citations or campaign ribbons. During subsequent reviews, the Army had only the "essential facts" of his military service, never his "<u>complete</u> Army Service Record." So, what we have are denials based on previous denials, and the defendant would argue that this is "appropriate process." If this is "appropriate process" than this court should dismiss this complaint.

Based upon the following memorandum of law and attached exhibits, the plaintiff will show that there exists a genuine issue of material fact or controversy between the parties and the plaintiff has stated a claim upon which relief can be granted.

## I.  STATEMENT OF FACTS

On August 31, 1970, defendant Secretary of the Army issued plaintiff Gilbert Bland an Undesirable Discharge under the provisions of Army Regulation (AR) 635-200, Chapter 10.AR 95. On February 28, 1974, plaintiff Bland applied to the Army Discharge Review Board for an upgrade of his Undesirable Discharge. AR 98. The Army Discharge

Review Board is an administrative agency created by Congress pursuant to 10 U.S.C. § 1553 to review the character of a discharge of any veteran who applies to the Discharge Review Board ("DRB") within 15 years of the date of discharge. On May 13, 1974, the Discharge Review Board denied plaintiff's application. AR 104. The DRB made no findings of fact and did not provide a statement of reasons for its decision. According to information[7] provided to the plaintiff in 1982, the DRB did <u>not</u> have the plaintiff's military records when they reached their decision not to upgrade the plaintiff's discharge.

On January 6, 1975, plaintiff applied to the Army Board for Correction of Military Records ("Army BCMR") seeking an upgrade in his Undesirable Discharge .AR 106. The Army BCMR is an administrative agency created by Congress pursuant to 10 U.S.C § 1552 to correct an error or remove an injustice in an applicant's military records. The authority of the Army BCMR includes recharacterization of a veteran's discharge. Two months later, on March 24, 1975, the Army BCMR denied plaintiff's application for an upgrade in discharge. AR 109-111.  Army BCMR made no findings of fact and prepared no statement of reasons to support its decision. As the ABCMR did not have the plaintiff's military records, it can be surmised that the decision to deny relief was not based upon that.

Two years later, in October 1977, Congress enacted Pub. L. 95-126, 91 Stat. 1106, requiring the Discharge Review Boards to review applications "under published uniform standards and procedures. The legislative history of this provision reflects that Congress required publication of uniform discharge review standards in order to eliminate lack of uniformity in DRB decision-making, and to eliminate the DRB practice of operating under vague, unpublished discharge review

---

[7] See AR 361

guidelines.[8] On April 5, 1977, the plaintiff's discharge was reviewed under these new provisions and was upgraded to general due to the plaintiff's complete tour of duty in Viet Nam. However, on September 22, 1978 the ADRB decided not to affirm the upgrade, AR 163, resulting in the plaintiff being denied any benefits as a result of the "upgrade" to general. Again, this decision could not have been based upon the plaintiff's military records, which were unavailable to the board. (For a discussion on the *effects* of P.L. 95-126 as it applies to the "upgrading" of plaintiff's discharge plaintiff has attached two reports from the Miami Herald and the Washington Post describing the effects of the law).[9] In it's explanation for denying the relief sought, the board wrote, in part "there was nothing in the record to indicate the separating command was not aware of the nature of his service" nor was there anything to suggest that it was (see notes supra regarding the absence of an accurate record of plaintiff's military service from his report of separation (DD-214)). To the contrary, the separating command indicates in it's report of separation that it was in fact unaware of the nature of plaintiff's service in Viet Nam, his Mission of Service (MOS), his awards and decorations earned in Vietnam and before, or his security clearance. These factors should have been considered during the discharge process but were not. This is not speculation or argument, it is based upon the defendant's own report of separation, which was later corrected, after the fact.

---

[8] Public Law 95-126 amended 38 U.S.C. § 3103(e)91) Notwithstanding any other provision of law, (A) no benefits under laws administered by the Veterans' Administration shall be provided, as a result of a change in or new issuance of a discharge under section 1553 of title 10, except upon a case-by-case review by the board of review concerned, subject to review by the Secretary concerned, under such section, of all the evidence and facts in each case under published uniform standards (which shall be historically consistent with criteria for determining honorable service and shall not include any criterion for automatically granting or denying such change or issuance) and procedures generally applicable to all persons administratively discharged or released from active military, naval, or air service under other than honorable conditions; and (B) any such person shall be afforded an opportunity to apply for such review under such section 1553 for a period of time terminating not less than one year after the date on which such uniform standards and procedures are promulgated and published.

[9] See attached "Carter Signs Bill to Toughen Eligibility for Veteran's Aid (Miami Herald 10/9/1977) Exhibit ' ' and "No VA Benefits Meanness of Vietnam Survives" (Washington Post October 1977) Exhibit 'A '

On December 12, 1978 plaintiff again applied for relief to the ABCMR AR 174-178. On August 27, 1980 (almost two years later) the defendant denied the plaintiff's application for relief. AR 205-209

On February 17, 2000, the plaintiff again made application to the ABCMR AR 288-289 after discovering new and compelling evidence bearing on his original discharge. The ABCMR agreed to hear the appeal. The ABCMR denied the appeal stating again that there was nothing in plaintiff's service record[10] or medical records that established his conduct was not willful."[11] The fact is that the record was, by admission, incomplete. To what extent is still unknown. What type of evidence of record would prove a negative suggestion? If plaintiff's behavior in 1970 is to be characterized as "willful" would it not have made more sense if he had gone AWOL, as has been suggested by the defendant, before he went to Viet Nam? If the plaintiff were choosing of his own free will, as has been stated repeatedly by the defendant, to go AWOL from the Army, why take a chance on being killed before he could have done so? The defendant's suggestion that the alleged AWOL was willful therefore defies logic and should be dismissed by any reasonable person.

On August 13, 2003 the plaintiff was seen at the V.A. Medical Center at Baltimore, Maryland for an examination and for medication adjustment. During this visit, it was suggested that he ask for a copy of his medical record from that facility. The plaintiff obtained the attached record[12] which states in part:

> "NEW AND MATERIAL EVIDENCE WARRANTING A REVIEW BY THE ARMY DISCHARGE REVIEW BOARD:
> The current clinical and psychometric assessment of the veteran's Posttraumatic Stress Disorder indicates that the veteran's psychiatric disorder clearly had its origins during his tour of duty in Vietnam and was exacerbated by circumstances subsequent to his return stateside as

---

[10] in this case only the "essential facts of military serive."
[11] Def. Memorandum of Points and Authorities…p.7, para 2
[12] See attached "Progress Notes" dated Aug 13, 2003 AR 319-320

documented in the above military history. Thus his current diagnosis and its documented etiology in Vietnam constitutes new and material evidence warranting a reconsideration by the Army Discharge Review Board and a discharge upgrade to Under Honorable Conditions.

It also warrants that his discharge shall be considered as under honorable conditions for VA purposes. Despite attempts by the veteran's legal counsel at the time of his appeal (See Brief in Support of Character of Service Determination dated 3/19/80) to highlight his post-Vietnam readjustment problems, a clear psychiatric diagnosis was not documented at the time. Moreover, the official diagnosis of PTSD was not recognized by the psychiatric establishment through its Diagnostic and Statistical Manual of Mental Disorders until 1980 (DSM-III). The veteran was offered no counseling or debriefing after his combat exposure and his PTSD went essentially undiagnosed and untreated until 1994 by the VA. The veteran clearly served a commendable tour of duty in Vietnam but experienced what is now recognized by the psychiatric profession as having been a posttraumatic stress disorder. Legal counsel referred to the veteran's "post-combat distress" which was heightened by the family and personal problems that he encountered upon his return to the States. This factor adversely affected his ability to go on serving honorably. It is compelling evidence which, in accordance with 38 C.F.R & 3.12, mitigate the veteran's periods of prolonged absences and warrant an upgrade in the character of his discharge to <u>fully</u> <u>honorable</u>.'

After reading the above remarks contained in his V.A. medical file, the plaintiff then filed on September 12th 2003 his final request for review from the ABCMR. AR 310-315 In it's denial (AR 304-309) of this last request, the ABCMR simply reiterated it's previous "plaintiff's attorney properly advised him" and "no indication that the plaintiff suffered from PTSD at the time of his discharge." The ABCMR completely ignored the medical reports and statements from the Veterans Administration, submitted to it for its consideration.

The plaintiff now turns to this court for justice. Before proceeding to the legal arguments in the case, the plaintiff would like to address some of the points raised in defendant's motion to dismiss, etc. The defendant suggests that because the plaintiff had obtained a job while he was allegedly in AWOL status, that this tends to "contradict Plaintiff's assertion that he was suffering from a mental illness to such a

degree that he could not perform his military duties."[13] First, it is not plaintiff's "assertion" that he suffered from a mental illness at the time of his discharge, this is the diagnosis of teams of doctors at the V.A. as well as a civilian psychiatrist[14]. Plaintiff wishes it were not so, but this is an illness for which he has been treated for many years. It is not an assertion, it is reality. Second, the job that the defendant uses to attempt to discredit 15 years of medical diagnosis by licensed medical doctors was as a tropical fish handler and delivery person for a company called Oceanography Unlimited in Patterson, New Jersey. The job dealt with *tropical fish*, if anything a calming environment within which to work, and obtain the money needed to feed oneself. It did <u>not</u> involve killing people or being subject to death at any moment. The job that the defendant had in mind for the plaintiff was being attached to a mechanized company, practicing "war games" in Germany. Emphasis on "War Games." Due to the plaintiff's illness, and after having just returned from a "real" war, the plaintiff was unable[15] to submit himself for "war games." There was not a choice to be made.

### I. Legal Standard Governing Review of Motions to Dismiss

The standard to be applied in reviewing a motion to dismiss under Fed. R. Civ. P.12(b)(6) is well established. The court must accept all of the factual allegations in the complaint as true and liberally construe them in the light most favorable to the plaintiff.

---

[13] Def. Memorandum of Points and Authorities…p.15, para 1

[14] See letter from Dr. Perovitch, AR 298-299

[15]– In 1980, posttraumatic stress disorder (PTSD) was introduced as a diagnostic entity in the Diagnostic and Statistical Manual of Mental Disorders, DSM-III (American Psychiatric Association, 1980). The disorder was described by exposure to one or several stressors (criterion A) and a triad of symptom clusters subsequent to the traumatic experiences; reexperiencing or intrusion (criteria B), <u>avoidance</u> and numbing (criteria C), and hyperarousal (criteria D).

See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Kowal v. MCI Communications

Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994); Hosey v. Jacobik, 966 F. Supp. 12, 13

(D.D.C. 1997). In addition, the plaintiff must be granted every favorable inference that

can be derived from the facts alleged. Atchinson v. District of Columbia, 73 F.3d 418,

422 (D.C. Cir. 1996); Kowal, 16 F.3d at 1276; Wiggins v. Hitchens, 853 F. Supp. 505,

508 n.1 (D.D.C. 1994).  A complaint may not be dismissed unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claims that would

entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Modderno v. King,

82 F.3d 1059, 1063 (D.C. Cir. 1996). As the U.S. Supreme Court clearly stated:


> When a federal court reviews the sufficiency of a complaint . . . [t]he issue is not
> whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence
> to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very
> remote and unlikely but that is not the test. . . .'In appraising the sufficiency of the complaint
> we follow, of course, the accepted rule that a complaint should not be dismissed for failure to
> state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in
> support of his claim which would entitle him to relief.'


Scheuer, 416 U.S. at 236 (quoting Conley, 355 U.S. at 45-46 (emphasis

added)). *Accord* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), *quoted in* H. J.

Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 249-250 (1989); Modderno, 82 F.3d

at 1063; Kowal, 16 F.3d at 1276.


## II. THIS COURT HAS JURISDICTION
## PURSUANT TO 28 U.S.C. §§ 1331 and 1361

Plaintiffs first claim seeks mandamus and injunctive relief against the Defendant for correction of his military records. Defendants first challenge this court's jurisdiction over this claim. Defendants contend Plaintiff's first claim must be dismissed because he has not established a federal question and the United States has not waived its sovereign immunity. It is well established, however, that military decisions and actions are reviewable by the judiciary to determine whether the secretary has acted within the sphere of his statutory and constitutional authority. Kalista *v.* Secretary of Navy, 560 F.Supp. 608, 611 (D.Colo.1983) (finding jurisdiction under 28 U.S.C. §§ 1331 and 1361 in action to compel Board for Corrections of Naval Records to upgrade discharge). As a preliminary matter, a person must first exhaust the administrative remedies provided by the military service before seeking to have a military record reviewed and corrected in civil court. *See* Thornton *v.* Coffey, *618* F.2d 686, 692 (10th Cir.1980). Plaintiff has exhausted all administrative remedies with the ABCMR in attempting to correct his records. He has also alleged the ABCMR's decision is arbitrary, capricious, and contrary to law. Thus, having exhausted all administrative remedies, Plaintiff's action to compel the Secretary of the Army to correct his records properly presents a federal question over which this court has jurisdiction.

For mandamus to issue, there must be a clear right to the relief sought, a plainly defined and peremptory duty on the part of respondent to do the action in question, and no other adequate remedy available. Johnson *v.* Rogers, 917 F.2d 1283, 1285 (10th Cir.1990). On the subject of Mandamus being available to the court, in a case similar to the plaintiff's, the court in Burkins v. U.S., 865 F. Supp. 1480 (D.C. Colo. 1994)) said:

he became "unfit" to perform the duties of his office and rank because of PTSD which he incurred while entitled to basic pay in Vietnam. Plaintiff alleges that the ABCMR's refusal to change his military record to reflect a medical discharge as of November 4, 1970 was arbitrary and capricious because it failed to consider onset of PTSD. Viewing these allegations in a light most favorable to Plaintiff, I find Plaintiff's claim for mandamus legally sufficient to withstand a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6). Accordingly, I deny Defendants' motion on this ground. (Burkins at 1490)

Plaintiff intends to offer evidence following discovery consisting of testimony as to the extent and nature of the legal counsel received by the plaintiff during his administrative proceedings. The plaintiff has at least one individual who was "counseled" by Captain Cowart at the same time as the plaintiff who will testify as to what legal counsel was delivered by Captain Cowart. In addition, the plaintiff will seek to have Mr. Cowart appear and testify as to the reasons he was unable to provide any type of effective counseling during the summer of 1971 at Fort Dix. In addition to witness testimony as to the lack of legal counsel, the plaintiff will have medical testimony as to the extent and effects of PTSD and Major Depression on the decision making process of soldiers just returned from war. Further medical testimony will show that loss of weight is <u>not</u> a symptom of Bacterial Enterocolitis,[16] as stated several times by the defendant, but <u>is</u> a symptom of Major Depression. Plaintiff will also show the court that the Army did not have his military records while he was undergoing the discharge process, in spite of what was offered by the defendant so far. Compare the "Report of Separation From Active Duty" (DD 214)[17] issued following his discharge at Fort Dix on August 31, 1971 with the same report[18] issued in 1978 following his "non-affirmed" upgrade under the Carter Special Discharge Review Program. It would appear from an inspection of both documents

---

[16] See attached report: "Alberta Clinical Practice Guidelines" describing the onset and symptomology of Bacterial Enterocolitis
[17] see AR 57
[18] see AR 54

that they might be, except for the name, two different soldiers. This too, will be offered into evidence, should the defendant's motion be denied.

On October 25, 1978, the Army Discharge Review Board in not upgrading the plaintiff's Discharge to Honorable stated in its reasons "The applicants record of service was not sufficiently meritorious to warrant an honorable discharge…."[19] Similarly on August 27th 1980, in the ABCMR's denial of relief, the decisional document states at page 1 "The Board Considered the following evidence: Exhibit B – Military Personnel Records"[20] and the ABCMR again on August 22, 2000 in it's "Memorandum of Consideration"[21] again denying plaintiff's request for relief states that "The Board considered the following evidence: Military Personnel Records (including advisory opinion, if any)." And finally on September 14th 2004 in it's Record of Proceedings states "Exhibit B – Military Personnel Records (including Advisory opinion, if any)."[22] What is interesting about all these denials of relief based on the plaintiff's military records is that on May 20th 1982 in a letter from LTC William P. Newton of the Personnel and Administration Center, St. Louis, Missouri, the colonel reported that the plaintiff's military records had been destroyed in a fire and that the current record consists of :

> "Although a number of alternate sources exist which enable the center to reconstruct the essential facts of military service these sources do not contain your complete Army service record."[23]

### III. PLAINTIFF'S SUIT IS NOT BARRED BY THE STATUTE OF LIMITATIONS (28 U.S.C. § 2401(a))

---

[19] Decisional Document #AD7X-006750 at p. 9 (AR 165)
[20] Decisional Document #AC75-01569A at p. 1 (AR 205)
[21] Memorandum of Consideration at p. 1 (AR 282)
[22] Record of Proceedings #AR2003095266 at p. 1 (AR 305)
[23] See Letter from LTC William P. Newton dated May 20, 1982 (AR 361)

If the plaintiff had not pursued and completed his administrative remedies before seeking relief in this Court, or if the plaintiff was now suing for monetary damages, the defendant would be correct in his argument that the six year statute of limitations would apply. But, the plaintiff has exhausted his administrative remedies, most recently in September of 2004, and he is seeking equitable, not monetary relief. A veteran who seeks only correction of his records—for example, when the only issue is whether a discharge should be upgraded from less than honorable to honorable—has six years from the date of a Correction Board decision to file a claim under the APA in federal district court see Irwin v. Veterans Administration, 498 U.S. 89 (1990) (statutes of limitations in suits against the United States are presumptively subject to the doctrine of equitable tolling). The APA waives sovereign immunity in nonmoney claims against the federal government. See, e.g., Clark v. Library of Congress, 750 F.2d 89 (D.C. Cir. 1984); B.K. Instruments, Inc. v. United States, 715 F.2d 713 (2d Cir. 1983); Beller v. Middendorf, 632 F.2d 788 (9th Cir. 1980), cert. denied, 452 U.S. 905 (1981); Jaffee v. United States, 592 F.2d 712 (3d Cir.), cert. denied, 441 U.S. 961 (1979). In Schnapper v. Foley, 667 F.2d 102 (D.C. Cir. 1981), the court concluded that the APA's waiver provision, 5 U.S.C. § 702, incorporated Larson's holding such that sovereign immunity was waived for all claims for injunctive relief, regardless of whether those claims arose under the APA:

> The legislative history of this provision could not be more lucid. It states that [5 U.S.C. § 702] was intended "to eliminate the defense of sovereign immunity with respect to *any action* in a court of the United States seeking relief other than money damages and based on the assertion of unlawful official action by a federal official. . . ."

Schnapper, 667 F.2d at 107 (quoting S. Rep. No. 996, 94th Cong., 2d Sess. at 2 (1976))

(emphasis added); *see also Geyen v. Marsh*, 775 F.2d 1303, 1307 (5th Cir. 1985) (finding that by enacting 5 U.S.C. § 702, "Congress waived sovereign immunity for suits seeking nonmonetary relief through nonstatutory judicial review of agency action"). The court also noted that the Senate Report had expressly stated that "[t]he time [has] now come to eliminate the sovereign immunity defense in all equitable actions for specific relief against a Federal agency or officer acting in an official capacity." *Schnapper*, 667 F.2d at 107-08 (quoting S. Rep. No. 996, 94th Cong., 2d Sess. at 7-8 (1976)); *Young*, 628 F. Supp. at 1058.

The Tenth Circuit's recent decision in *Simmat v. United States Bureau of Prisons*, 2005 WL 1541070 (10th Cir. July 1, 2005), supports this conclusion. The plaintiff there, a federal prisoner, sued prison dentists in their official capacity and the Bureau of Prisons ("BOP") for injunctive relief, alleging that he had been denied basic medical care in violation of the Eighth Amendment. *Simmat*, 2005 WL 1541070, at *1. In ruling that sovereign immunity did not bar the plaintiff's constitutional claims against either the prison dentists or the BOP, the court of appeals held that the sovereign immunity waiver, 5 U.S.C. § 702, which the court recognized incorporated *Larson*'s exception to the doctrine of sovereign immunity, was a general waiver of the government's sovereign immunity for claims seeking injunctive relief, regardless of whether those claims arose under the APA. *Id.*. The court held that, where a plaintiff seeks injunctive relief against a federal official in his official capacity for a constitutional violation, the waiver of sovereign immunity in 5 U.S.C. § 702 allows him to proceed directly under the Constitution. *Id.*. The court reasoned that, if it accepted the defendants' sovereign immunity argument, the plaintiff would have no remedy against federal officials who fail

to carry out their constitutional duties, "violating the basic principle that 'where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief.'" *Id.* (quoting *Bell v. Hood*, 327 U.S. 678, 684 (1946)).

In support of his position that the six year statute of limitations should apply to this case, the defendant cites Spannaus v. United States Dep't of Justice, 262 U.S. App. D.C. 325, 824 F.2d 52, 55 (D.C. Cir. 1987) (finding, in a FOIA case, that the six-year statute of limitations in § 2401(a) was "jurisdictional," and "as such must be strictly construed"). However, in 1990, the Supreme Court announced that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 95, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (rejecting the Fifth Circuit's jurisdictional reading of Title VII's filing deadline); *see generally* Chung v. United States Dep't of Justice, 333 F.3d 273, 277 (D.C.Cir.2003).

Speaking to the subject of equitable tolling, our Court of Appeals for the D.C. Circuit said in  HARRIS, v. FEDERAL AVIATION ADMINISTRATION AND JANE F. GARVEY, ADMINISTRATOR OF THE FEDERAL AVIATION ADMINISTRATION, (No. 02-5304) (C.A.D.C. 2004) 359 U.S. App. D.C. 281; 353 F.3d 1006;

> "We have previously declared that section 2401(a), "unlike an ordinary statute of limitations, ... is a jurisdictional condition attached to the government's waiver of sovereign immunity," Spannaus v. United States Dep't of Justice, 262 U.S. App. D.C. 325, 824 F.2d 52, 55 (D.C. Cir. 1987). Nevertheless, after the Supreme Court in Irwin v. Department of Veterans Affairs, 498 U.S. 89, 95-96, 112 L. Ed. 2d 435, 111 S. Ct. 453 (1990),

rejected the Fifth Circuit's jurisdictional reading of Title VII's similar filing deadline and instead held that the "same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States," *we recently expressed doubt about the jurisdictional nature of an analogous statute of limitations* (emphasis added). *See* Chung v. DOJ, 357 U.S. App. D.C. 152, 333 F.3d 273, 277 (D.C. Cir. 2003) (rejecting jurisdictional nature of Privacy Act statute of limitations in light of *Irwin*); *see also* Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 71 L. Ed. 2d 234, 102 S. Ct. 1127 (1982) ("filing a timely charge of discrimination ... is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling"); Leavell v. Kieffer, 189 F.3d 492, 494-95 (7th Cir. 1999) (statute of limitations not jurisdictional but instead affirmative defense)."

It would thus appear that the law in the D.C. circuit would hold that in the case of a service member seeking administrative review of a discharge decision rendered by a military review board, that the six year statute of limitations would begin to run on the date such agency rendered it's decision denying relief. At the very least, the statute would not be jurisdictional, but would only be an affirmative defense, if that.

There are many cases from other circuits that support the proposition that equitable tolling in the context of a service member seeking review of an administrative discharge  during pursuit of an administrative remedy tolls § 2401(a).[24] The Court, in Wood v. Secretary of Defense decided that section 2401(a) does not apply to actions such as this seeking only declaratory and injunctive relief to correct less than fully honorable discharge certificates. Alternatively, the Court holds that if it does apply, plaintiffs' claims did not accrue until the respective military discharge review boards or boards for correction of military records denied them upgrades to a fully honorable discharge, which

---

[24] *See* Geyen v. Marsh, 775 F.2d 1303, 1307-08 (5th Cir.1985); Nichols *v.* Hughes, 721 F.2d 657, 660 (9th Cir.1983); Mosley *v.* Secretary of the Navy, 522 F.Supp. 1165, 1167 & n. 5 (E.D.Pa.1981), *aff'd without published opinion,* 688 F.2d 823 (3d Cir.1982)

occurred within six years of their filing of this action. (<u>Wood</u> v. <u>Secretary of Defense</u>, 496 F. Supp. 192 at 198 U.S.D.C., D.C. 1980). For example, in <u>Wood</u> v. <u>Secretary of Defense,</u> <u>supra,</u> four veterans administratively issued Undesirable Discharges in the 1950s brought suit nearly two decades later. The Court rejected defendants' reliance on the six-year statute of limitations in § 2401(a), stating:

> "The Court concludes that section 2401(a)
> does not apply to actions such as this seeking only
> declaratory and injunctive relief to correct less than fully
> honorable discharge certificates."

496 F. Supp. at 198.


In corrective actions brought more than six years from the date of discharge, the courts have not often discussed the impact of 28 U.S.C. § 2401 -- evidence itself that conceptually such actions, like habeas corpus actions, are alien from the context in which time bars are relevant. And those courts which have discussed the applicability of § 2401(a) to corrective actions have rejected defendant's argument that it applies to such lawsuits. See <u>Wood v. Secretary of Defense,</u> 496 F. Supp. 192 (D.D.C. 1980); <u>Kaiser v. Secretary of the Navy,</u> 525 F. Supp. 1226 (D. Colo. 1981); <u>Mulvaney v. Stetson,</u> 470 F. Supp. 703 (N.D. 111. 1979); <u>Calhoun v. Lehman,</u> Civ. No. 78-0988 (D.D.C. January 27, 1982)(Gesell, J.)(attached hereto); <u>Walters</u> <u>v. Secretary of Defense,</u> 533 F. Supp. 1068 (D.D.C. 1982).

In this corrective action, however, plaintiff seeks purely prospective relief to vindicate his right to live in freedom without the stigma caused by the legally unjustified character of the discharge certificate issued to him. Thus, this is not a case in which a claim against a government official can validly be considered

to be a claim "against the United States." Only actions which "would expend itself of the public treasury or domain . . ." are truly claims "against the United States." See National Treasury Employees Union v. Nixon, 521 F.2d 317, 319 (D.C. Cir. 1975), quoting Land v. Dollar, 330 U.S. 737, 738 (1947). This case is governed by the principles stated in Edelman v. Jordan, 415 U.S. 651 (1974), in which the Supreme Court held that, for sovereign immunity purposes, an action against an official seeking injunctive relief requiring the official to act in his official capacity according to the law announced by a court is an action against the official -- and not against the sovereign -- even where the injunction would have an effect on the public treasury. As our Court of Appeals, held in National Treasury Employees Union v. Nixon, supra, the "core" of the doctrine that treats actions against officials as actions against the United States is protection of "the public fisc against uncontested claims for monetary relief." 521 F.2d at 319. Where, as here, the requested correction of records affects the treasury minimally, if at all, the doctrine in Spannaus, relied upon by defendants has no application.

A second independent reason that § 2401 is no bar to corrective action derives from the nature of a less than Honorable Discharge. As our Court of Appeals recognized as early as 1961, and has reaffirmed even since, "any discharge characterized as less than honorable will result in serious injury. It . . . results in an unmistakable social stigma which greatly limits the opportunities for both public and private civilian employment."[25] Independent studies and legal and military

---

[25] Bland v. Connally, 293 F.2d 852, 858 (D.C. Cir. 1961); accord, Giles v. Secretary of the Army, 627 F.2d 554, 557 n. 9 (D.C. Cir. 1980); Roelofs v. Secretary of the Air Force, 628 F.2d 594, 603 (1980)(Bazelon, J., concurring in result); Van Bourg v. Nitze, 388 F.2d 557, 559 n. 1 (D.C. Cir. 1967); see also Walters v. Secretary of Defense, 533 F. Supp. 1068, 1072 (D.D.C. 1982), appeal pending, No. 82-2089 (D.C. Cir.);

scholars have consistently confirmed this longstanding precedent.[26] Accordingly, this action is not time barred because even if § 2401(a) applies to corrective actions, it does not bar an action brought within six years of a DRB denial of relief.

## IV. THE COURT SHOULD NOT GRANT SUMMARY JUDGEMENT AS THERE ARE GENUINE ISSUES OF MATERIAL FACT IN DISPUTE

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact *and* that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (1995). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 91 L. Ed. 2d 265 (1986). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. Hanks v. Transcontinental Gas Pipe Line Corp., 953 F.2d 996, 997 (5th Cir. 1992). If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. Celotex, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue

---

Sofranoff v. United States, 165 Ct. Cl. 470, 478 (1969); Crawford v. Davis, 247 F. Supp. 943, 946 (E.D. Pa. 1966), cert. denied, 383 U.S. 921 (1966); Davis v. Stahr, 293 F.2d 860 (D.C. Cir. 1961).

[26] See, e.g., Comptroller General, Report to the Congress of the United States: Military Discharge Policies and Practices Result in Wide Disparities: Congressional Review is Needed (1980); Everett, Military Administrative Discharges: The Pendulum Swings, 1966 Duke L.J. 41, 44-45; B. Jones, The Gravity of Administrative Discharges: A Legal and Empirical Evaluation, 59Mil. L. Rev. 1 (1973); Presidential Clemency Board, Report to the President, at 403-09 (1975); accord, Joint Hearings on Bills to Improve the Administration of Justice in the Armed Forces Before the Subcommittee on Constitutional Rights of the on the Judiciary and Special Subcommittee of the on Armed Forces, 89th Cong., 2d Sess. 300 (1966)

for trial." <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); <u>Federal Savings and Loan, Inc. v. Krajl</u>, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. <u>King</u> v. <u>Chide</u>, 974 F.2d 653, 656 (5th Cir. 1992).

Plaintiff herein has a claim that could lead to relief. As the Ninth Circuit recently stated, when reviewing a Rule 12(b)(6) motion, a federal court

> must "take as true all allegations of material fact stated in the complaint and construe them in the light most favorable to the nonmoving party." See, <u>WARSHAW</u> vs. <u>XOMA</u>, 74 F.3d 955, 957 (9th Cir. 1996). As the Supreme Court has stated, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claim. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test." <u>SCHEUER</u> vs. <u>RHODES</u>, 416 U.S. 232, 236 (1974). Rather, "<u>a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.</u>" <u>CONLEY</u> vs. <u>GIBSON</u>, 355 U.S. 41, 45-46 (1957)

Courts should not dismiss a <u>pro se</u> pleading unless it is absolutely clear that the deficiencies in the pleading cannot be cured by amendment. See, <u>KARIM-PANAHI vs. LOS ANGELES POLICE DEPT</u>., 839 F.2d 621 (9th Cir. 1988). In addition, this court should advise this pro se plaintiff about the defects in the complaint to assist plaintiff in filing an amendment. See, <u>NOLL</u> vs. <u>CARLSON</u>, 809 F.2d 1446 (9th Cir. 1987)(before dismissing a pro se civil rights complaint for failure to state a claim, <u>the district court must give the plaintiff a statement of the complaint's deficiencies</u>. . . . "Without the benefit of a statement of deficiencies, the pro se litigant will likely repeat previous errors.") quoting, <u>KARIM</u>-v -<u> PANAHI</u>, 839 F.2d at 623-24.

The issues in this case are several. What degree of assistance of counsel was required during the discharge process? As has been stated here, the plaintiff was led to a classroom with some 18 other "clients," shown a chart on the wall, and then shown the place on the waiver forms that his signature should go. The courts have spoken on this issue and have found this lacking. Plaintiff demonstrates below that he was issued a less than honorable discharge in direct violation of applicable Army Regulations. Furthermore, the record is clear that plaintiff was deprived of his right under Article 27(a), UCMJ, 10 U.S.C. §827(a) and the Sixth Amendment to the Constitution, to effective assistance of counsel. The findings of the Discharge Review Boards are contrary to law and are not supported by substantial evidence. The Undesirable Discharge herein violates the letter and spirit of Army Regulation 635-200, Chapter 10, "Discharge for the Good of the Service." The plaintiff is not even eligible for discharge under those regulations, and the required procedures to insure that he was fully informed of his rights and options were blatantly violated. The Procedural Safeguards Provided By Army Regulation 635-200, Ch. 10 Were Violated In This Case. AR 635-200, Chapter 10 specifies procedures which must be followed to insure that a soldier considering a Chapter 10 request for discharge in lieu of court martial is fully aware of his legal rights and options and of the consequences of such a discharge. The regulations require that a solider be *counseled* by an attorney who is a commissioned officer of the judge Advocate General's Corps, or an attorney qualified under Article 27(b)(1) of the Uniform Code of Military Justice. The purpose of these safeguards is to insure that a soldier makes a knowing, intelligent and voluntary request for a Chapter 10 discharge. In order to validly to request a discharge in lieu of court martial, a soldier, with his appointed military attorney as a witness, is required to sign a statement acknowledging that he understands he may receive a punitive (i.e., a bad conduct or dishonorable) discharge as a result of the court-

martial proceeding and also that he understands the possible adverse consequences of a

Chapter 10 discharge. Chapter 10-2 "Personal decision," subpart b. states:

> 10-2 Personal decision. Commanders will: insure
> that there is no element of coercion in submitting
> a request for discharge for the good of the service.
> The member will be given a reasonable tine (not
> less than 48 hours) to consult with counsel (Para.
> 1-10(2) and to consider the wisdom of submitting
> such a request for discharge. AR 635-200 Chapter
> 10, April 19, 1972.

In today's AR 635-200 Chapter 10, the defense counsel has the duty to provide

actual and real legal representation[27] to his client, representation that the defendant herein

does not even suggest was provided to the plaintiff during his discharge proceedings.

Thus, plaintiff's rights were violated in that he was not properly counseled pursuant to

Army Regulations, and his request for a Chapter 10 discharge was based on the erroneous

advice given to him by counsel.

Plaintiff contends that because he was not properly informed of his legal rights, the

request which he made for a chapter 10 discharge violated the requirement that a solider

have an opportunity to consider the wisdom of the request and that such a request be free

from coercion. The ability of an individual to make an informed and a voluntary decision

---

[27] *b.* Consulting counsel will advise the soldier concerning—
(1) Elements of the offense(s) charged.
(2) Burden of proof.
(3) Possible defenses.
(4) Possible punishments.
(5) Provisions of this chapter.
(6) Requirements of volunteerism.
(7) Type of discharge normally given under the provisions of this chapter.
(8) Rights regarding the withdrawal of the soldier's request.
(9) Loss of veterans' benefits.
(10) Prejudice in civilian life based upon the characterization of discharge. Consulting counsel may advise
the

encompasses the right to make a knowing and intelligent decision. When erroneous information (e.g. he was facing a dishonorable discharge; there was no affirmative defense to the AWOL accusation, etc.) is provided to an individual, the individual's right to give informed consent is violated. The Supreme Court has recognized that a guilty plea cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts. Boykin v. Alabama 395 U.S. 238 (1969), McCarthy v. U.S. 394 U.S. 459 (1969) Johnson v. Zerbst, 304 U.S. 458, 464 (1938). Plaintiff contends that he was coerced in this case in the sense that he was provided compelling information about the severe consequences of his court martial trial (i.e., a possible separation with a dishonorable discharge from the Army; imprisonment, etc.) and that erroneous information influenced his critical decision to request a Chapter 10 discharge. Since the information plaintiff relied on was inaccurate, he was denied the right to properly consider the wisdom of his actions and he was improperly coerced into making the Chapter 10 request.

While it was a requirement of AR 635-200 Chap. 10 that in order to qualify for an Undesirable Discharge the underlying offense must be referred to a court that had the ability to confer a "punitive discharge." In the case of the plaintiff, the underlying charge was never referred to a court of all, much less one that was able to confer a punitive discharge. Today, AR 635-200 Chapt. 10-1 (2) requires that the charges be referred to a court before an administrative discharge can be considered.[28] The Army regulation has evolved to this point for good reason and should be applied here.[29]

---

[28] AR 635-200Chapter 10 Discharge in Lieu of Trial by Court-Martial
10–1. General

**a. Defendant Violated Plaintiff's Right To Effective Assistance Of Counsel Guaranteed By The Sixth Amendment To The United States Constitution, By Article 27(a) And AR 635-200, Chapter 10**

Plaintiff was also denied the right to effective assistance of counsel with respect to the discharge herein. This right is conferred on him by the Sixth Amendment by Article 27(a), UCMJ, 10 U.S.C.§827 (a), the case law of the United States Court of Military Appeals, and by AR 635-200, Chapter 10. Article 27(a), UCMJ, 10 U.S.C. §827(a) states that there is a right to counsel for any person who faces general or special court martial charges, and the decisions of the U.S. Court of Military Appeals interpreting that requirement consistently hold that the right to counsel entails the right to effective assistance of counsel. United States v. Jefferson, 13 M.J. 1 (CMA 1982); United States v. Rivas 3 M.J. 282 (CMA 1977). The Court of Military Appeals has stated that:

> . . . a criminal accused is entitled to more than a competent counsel; his right is to one who exercises that competence without omission throughout the trial. As Judge Thomas put in U.S. v. Gillard, Supra. 49 C.M.R. at 475: "We view 'effective assistance' as encompassing both the competence of counsel and the utilization of such competence by the counsel on behalf of the accused. An accused could have the most competent counsel in the corps but if the attorney failed to use his best effort on behalf of his client, it would be of little solace to a convicted and confined client. Conversely, an incompetent attorney may exert superhuman effort on behalf

---

*a.* A soldier who has committed an offense or offenses, the punishment for which under the UCMJ and the Manual for Courts-Martial, 2002 (MCM 2002), includes a bad conduct or dishonorable discharge, may submit a request for discharge in lieu of trial by court-martial.

(1) The provisions of RCM 1003(d), MCM 2002 do not apply to requests for discharge per this chapter unless the case has been referred to a court-martial authorized to adjudge a punitive discharge.

[29] Under the regulations that govern the closely related military Discharge Review Boards (but not the Correction Boards) a service member's discharge should be upgraded if there is "substantial doubt" he would have received the same discharge under current procedures and policies. 32 C.F.R. § 70.9(c)(1). See generally Blassingame v. Secretary of the Navy, 811 F.2d 65, 66-67 (2d Cir. 1987)

> of his accused, <u>but if he does not
> recognize legal issues, present available
> defenses, or otherwise is unaware of
> possible legal objections</u> to evidence or
> testimony, <u>his effort will seldom rise to
> the requisite effectiveness required</u> by
> law. <u>U.S. v. Rivas,</u> 3 M.J. 282 at 289.
> (emphasis added)

In analyzing the assistance provided by counsel herein, the facts are clear that
counsel's advice was so blatently non-existent and so critical to plaintiff's decision-
making that plaintiff was denied effective assistance of counsel. The regulations
governing a Chapter 10 discharge are clear that such a discharge can only be given when
a soldier is facing court martial charges, which could lead to a bad conduct or
dishonorable discharge. Since the charges facing the plaintiff were never referred to a
court, we must speculate as to what court the charges *might have been* referred to. How
could the plaintiff have known whether the court had the power to issue him a punitive
discharge if he did not know to which type of court the charges might be referred? More
importantly, how could the plaintiff's counsel advise him to waive his rights to a trial and
accept a stigmatizing discharge if he did not know that the court to which the charges
*might have been* referred had the power to issue a punitive discharge, as required by the
regulation? The possibility exists that the plaintiff's counsel never even read the charge
sheet and did not know that the charges had <u>not</u> been referred to a Special Court Martial.

The three courts available at Ft. Dix at the time were Summary, which did not
have the ability to authorize a punitive discharge, Special, which could only authorize a
Bad Conduct discharge, but not a Dishonorable discharge, as threatened in the waiver
forms signed by the plaintiff, and General, which handles capitol, serious cases, and
which could have issued any of the available punitive discharges, including a

Dishonorable. At the time, AWOL charges were not being referred to General Courts, and since a real lawyer would of necessity represent one facing a General Court, we must assume that the charges *would have been* referred to a Special Court. The statute-governing jurisdiction of a special court martial, 10 U.S.C. 817, is <u>clear</u> that it can never adjudicate a dishonorable discharge[30]. But for some reason "Dishonorable Discharge" appears on the waiver forms[31] as a possible consequence of the un-referred charges. Unless the plaintiff had been referred to a General Court martial, the defendant could not have by law issued him a dishonorable discharge. AR 635-200, Ch. 10-2 requires a JAGC attorney to advise a soldier of possible punishments. In this case, the legal advice regarding possible punishments was completely contrary to federal law.

The military discharge review boards have recognized that denial of a soldier's right to effect assistance of counsel when he is considering a Chapter 10 discharge is a serious violation of military regulations which requires an upgrade in an Undesirable Discharge. One Army Discharge Review Board case, AD 79-0062, stated as part of its rationale for upgrading a discharge the fact "that the applicant did not receive sufficient legal counsel." The court martial charges in that case, as in this case, could not have led to a bad conduct or dishonorable discharge, but the appointed military attorney did not advise the soldier of that fact, and the soldier requested and obtained a Chapter 10 discharge. The Discharge Review Board upgraded the discharge to fully honorable as a result of this error. Certainly it is prejudicial for a "qualified" JAGC lawyer to give wrong

---

[30] Article 19, UCMJ, 10 U.S.C. § 819 § 819. Art. 19. Jurisdiction of special courts-martial
Subject to section 817 of this title [10 U.S.C. § 817] (article 17), special courts-martial have jurisdiction to try persons subject to this chapter [10U.S.C. §§ 801 et seq.] for any noncapital offense made punishable by this chapter [10 U.S.C §§ 801 et seq.] and, under such regulations as the President may prescribe, for capital offenses. Special courts-martial may, under such limitations as the President may prescribe, adjudge any punishment not forbidden by this chapter [10 U.S.C. §§ 801 et seq.] <u>except</u> death, <u>dishonorable discharge</u>,....
[31] See AR 90 – 91, p. 2

legal information, which a soldier relies on in making a critical decision. In fact, plaintiff contends that the prejudice here is clearer for we can identify precisely how the ineffective assistance of counsel affected the outcome of the case. Plaintiff requested separation from the Army because he erroneously believed from counsel that he could be separated with a dishonorable discharge. Further, effective counsel would have included a discussion as to the underlying charge of AWOL, for the plaintiff had an affirmative defense. Effective counsel might even have asked the command for the opportunity to treat the plaintiff's psychiatric disorders, or to offer the plaintiff "rehabilitation" based on his recent war service. But now it appears that the command did not know of the plaintiff's war service, or that he was anything other than a trainee. Would a lawyer today allow his client to waive his rights and seek a punitive discharge without advising the command of his client's service or medical disabilities?

Effectiveness of counsel is a mixed question of law and fact. Strickland v. Washington, 466 U.S. 668, 698 (1984). The burden of proof to be used by the Court in evaluating a claim that counsel's assistance was ineffective is drawn from Strickland and requires that the claimant show both that counsel's performance was so deficient that counsel was not functioning as "counsel" guaranteed a defendant by the Sixth Amendment and that there was a reasonable probability that, but for counsel's errors, the outcome would have been different. See Strickland, 466 U.S. at 687; see also United States v. Dominguez Benitez, ___ U.S. ___, 124 S. Ct. 2333, 72 U.S.L.W. 4478, 4480-81 (June 14, 2004).

Every criminal defendant, whether before a military or civilian tribunal, is entitled to effective assistance of counsel in conducting his or her defense. U.S. Const. amend.VI;

Strickland v. Washington, 466 U.S. at 687-96; United States v. Cain, 59 M.J. 285, 294
(C.A.A.F.2004). The Supreme Court in Strickland developed a two-pronged test for
determining whether a criminal defense attorney's assistance was deficient. First, the
criminal defendant must show that counsel made errors "so serious that counsel was not
functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."
Strickland, 466 U.S. at 687. In plaintiff's case, his counsel made absolutely no mention of
possible defenses, or any other strategy besides signing a waiver in order to be
discharged. Further, this can not be construed as accepting guilt for the underlying
offense, as the plaintiff has never and will never state that he was guilty of being AWOL,
as accused. "Second, the defendant must show that the deficient performance prejudiced
the defense." Id. As has been discussed supra, the actions of the defendant have and
continue to cause the plaintiff significant prejudice and hardship in life. They flow from
the deficient proceeding conducted at Fort Dix in 1971. This same two-part test has been
adopted for evaluating the performance of defense counsel in military cases. See Cain, 59
M.J. at 294; United States v. Boone, 42 M.J. 308, 313 (C.A.A.F. 1995); United States v.
Scott, 24 M.J. 186, 188 (C.M.A. 1987). See also Longval v. United States, 41 Fed. Cl.
291, 296 (1998). The procedures and regulations in place in the context of a court-martial
are specifically designed to protect the defendant's right to counsel. See, e.g., R.C.M.
502(d) (qualifications for counsel); R.C.M. 506 ("Accused's rights to counsel"); AFR 39-
10, ch. 4,  4-3(c) ("Before they apply for discharge under [Chapter Four][32], airmen must
be given an opportunity to consult legal counsel.").

       Rather than demonstrate that he would, without a doubt, have been acquitted
absent  the shortcomings of his counsel, an accused needs to demonstrate that he was

---

[32] Analogous to the Army's AR-635-200 Chapt. 10.

denied a "a reliable adversarial testing process," i.e., that he did not receive the

"assistance necessary to justify reliance on the outcome of the proceeding." Strickland,

466 U.S. at 692; see also id. at 688. When counsel fails to investigate a potential defense

adequately, such failure may prejudice the accused. See United States v. Gibson, 51 M.J.

198 (C.A.A.F. 1999) (finding ineffective assistance prejudicial to the accused because

"defense counsel's failure to investigate the evidence in the CID report deprived appellee

of 'a fair trial, a trial whose result is reliable.'" (quoting lower court's unpublished

opinion that quotes Strickland, 466 U.S. at 687, and Scott, 24 M.J. at 188)); United States

v. Wean, 45 M.J. 461, 464 (C.A.A.F. 1997) ("[I]t was clear the deficiencies in [counsel's]

performance were not due to tactical decisions but, rather, were due to his failure to

investigate, prepare, and research."); Scott, 24 M.J. at 193 ("[Counsel's] failure to

promptly investigate was not the result of strategy or a reasonable decision not to

investigate. Rather, it was simply the result of a lack of preparation."). "[C]ounsel has a

duty to make reasonable investigations or to make a reasonable decision that makes

particular investigations unnecessary." Strickland, 466 U.S. at 691. In this case, Captain

Cowart failed to investigate the most basic facts necessary for any type of defense:

whether or not the plaintiff was a "trainee" or had ever been to Vietnam (and whether this

might have been a factor in the allegations of AWOL) or had he been decorated by the

Army for his service in Vietnam. To his credit, the Captain did spell the plaintiff's name

correctly in the waiver.

**Captain Chrisman**.

On December 14th, 1970, the plaintiff was assigned as counsel for his pending

court martial charges a Captain John R. Chrisman[33]. On that day, the plaintiff was, as

described above, detailed to a classroom with a group of other servicemen in order to

meet with our "counsel." Again, waiver forms were passed out, and reference was made

to a chart on the wall describing the benefits attributable to each of the five types of

discharge currently being offered by the Army. The captain then explained the current

policy at Fort Dix[34] as follows: While I am not advising any one of you to go AWOL,

should you not currently have enough AWOL time, or number of AWOLs to qualify for

an undesirable discharge, you will instead be tried by a Special Court Martial. The results

of such a court will include a Bad Conduct discharge, and/or several months in the

stockade, which would also constitute a federal conviction on your record. The message,

of course, being that upon review of the options presented, if one had enough AWOL

time and the correct number of AWOLs, then he could be processed for an administrative

discharge, no Special Court Martial, no prison, no criminal record, and since the

Undesirable Discharge fell directly in the middle of the chart as far as lost benefits, it was

better than a Bad Conduct Discharge. We were left to do the math.

As further evidence of the unmistakable message being sent here, one may

observe that on the charge sheet listing the plaintiff's AWOL allegations in December of

1970, these charges were in fact referred to a Special Court. Once the plaintiff had the

correct amount of "lost time" and number of AWOLs in August of 1971, the charges

were not referred to any court. But then the defendant, throughout the ADRB and

ABCMR process, continues to beat the plaintiff with the number of AWOLs he is alleged

---

[33] See AR 83-84

[34] this will be documented at trial through the discovery process in obtaining documents from the defendant
outlining the policies and procedures in effect at Fort Dix at the PCF as they apply to discharge processing

to have committed and the number of days he was alleged to have been AWOL. It is currently also used by the V.A. to deny all gratuitous benefits, readjustment, education, treatment for his hearing loss, vocational rehabilitation, and service connection for the disabilities he suffered during the war in Vietnam[35].

Plaintiff maintains that once there is a right to counsel, there is a right to effective assistance of counsel. Plaintiff urges this Court to follow the holdings of the U.S. Court of Military Appeals and the discharge review boards cited herein, and to recognize his right to effective assistance of counsel. The counsel detailed to represent him utterly failed to assist him and in effect left him without counsel of any sort.

### b. The Discharge Review Board's Decision Violates Due Process In That It Is Arbitrary, Capricious And Unsupported By Substantial Evidence

In Robinson v. Resor, 152 U.S. App. D.C. 204, 469 F.2d 944 (1972), our Court of Appeals reviewed the corrective action of an Army veteran who, like plaintiff, was issued an Undesirable Discharge as a result of a resignation in lieu of court martial. The Court agreed that the Army DRB's decision in the veteran's case violated due process and was arbitrary and capricious. 152 U.S. App. D.C. at 209, 469 F.2d at 949. Accordingly, the court ordered the Army to upgrade his discharge. 15 U.S. App. D.C. at 212, 469 F.2d at 952. As in Robinson, Id., plaintiff claims here that the Army DRB's decision violated due process, and was arbitrary and capricious.

In Chappell v. Wallace, 462 U.S. 296 (1983), the Supreme Court held that when a Board reviews the merits of a former service member's application under § 1552(a)(1), the decision is subject to judicial review. Id. at 303 ("Board decisions are subject to judicial review and can be set aside if they are arbitrary, capricious, or not based on substantial evidence."). It is instructive that Chappell held that Board decisions to correct

---

[35] see P.L. 95-126 and Plaintiff's Exhibit 'B' attached (Letter from V.A. Denying benefits)

or not correct a military record are reviewable despite the fact that § 1552(a)(1) provides that the Secretary "*may* correct any military record." 10 U.S.C. § 1552(a)(1) (emphasis supplied). Having determined that the Board's decisions are reviewable, we now turn to the issue of whether the decisions here were "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706. In *Kreis v. Secretary of Air Force,* 866 F.2d 1508 (D.C. Cir. 1989), this court held that:

> "substantive decisions of correction boards under § 1552(a) were reviewable notwithstanding a similar delegation to the Boards to make corrections when there was an "error or injustice." We did so relying on the Supreme Court's opinion in *Chappell*-which was most closely on point-but recognizing that *Chappell's* logic was very much in tension with the later Supreme Court opinion in *Webster v. Doe,* 486 U.S. 592 (1988)."

So it would appear that this court has an opportunity to look at the appeals process in this case to determine whether it was, in fact, arbitrary, capricious, or contrary to law. We show below specifically how the ADRB decision was arbitrary, capricious, or contrary to law.

The ABCMR and ADRB have the discretion to correct military records to prevent injustice. See Wolfe v. Marsh, 835 F.2d 354, 358 (D.C. Cir. 1987). However, a review board's failure to exercise its discretion under the appropriate circumstances is subject to judicial review under the APA. See also Dougherty v. U.S. Navy Bd. for Correction of Naval Records, 784 F.2d 499, 500 (3d Cir. 1986). "The district court is to set aside the [agency's] action if it finds it to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" See id. at 501 (citations omitted). The district court must also determine whether the agency's decision was supported by substantial evidence and whether the agency considered all of the proffered evidence. See Mozur v. Orr, 600 F. Supp. 772, 776 (E.D. Pa. 1985); Smith v. Dalton, 927 F.Supp. 1, 5 (D.D.C.1996).

Pursuant to 10 U.S.C. §1553, defendant Secretary of the Army has established a Discharge Review Board to review the character of a veteran's less than honorable discharge. In it's first substantive review of the plaintiff's discharge, on October 25, 1978, in decisional document #AD7X-006750[36] Part VI Section A entitled 'Applicant's Contentions – Board Issues' lists four contentions raised at the ADRB level. In it's findings, the ADRB in it's denial relates an Article 15[37] (non-judicial punishment) received by the plaintiff while in Vietnam. The offense used to deny plaintiff relief at this board consisted of the plaintiff driving a military vehicle (2 ½ ton truck reg. # 4L6866) from Phu Tai, and upon entering the City of Qui Nhon, was driving at a speed of 35 miles per hour in a 25 miles per hour zone. In the interest of justice, the board failed to consider that this was a war zone, and that the road between Phu Tai and Qui Nhon, on July 22, 1969, was one between which Army of Viet Nam (ARVN) forces and Viet Cong (VC) forces had been exchanging fire. The plaintiff was driving an unarmed and unarmored vehicle and in order to save his life, was driving 10 miles over the posted speed limit in order to reach his compound, and safety.

Similarly, the board rejected the plaintiff's issue regarding the lack of counsel during the discharge process by stating "Record further reveals that in August 1971, applicant submitted his second request for a good of the service discharge and was counseled on 10 August 71 by a qualified JAG counsel." See remarks as to the effectiveness of this counsel supra. And finally in addressing the fact that the separating command was not aware of the nature of the plaintiff's service (see plaintiff's exhibits ' ' and ' ' attached) states "Record reveals that there were numerous administrative errors in the original DD 214, but there is nothing to indicate that the separating command was not aware of the nature of the applicant's service." That is nothing beside the actual report of separation itself. This statement defies logic and cannot be explained by so bold a statement. If this statement is not the very definition of arbitrary and capricious,

---

[36] see .AR 157 -164
[37] see AR 67-68

then what is? The report of what we had just done to this man is totally lacking in the most rudimentary aspects of his service that would lead a reasonable person to conclude that perhaps another course should have been followed, but these are just "administrative" and were not really depended upon when the punitive action was taken. Is this believable by anyone? While the board reiterated its dependence on the "file" in it's denial, it should be noted that this file was not "your complete Army service record" but only the "essential facts of military service." Plaintiff contends that as the defendant was the custodian of plaintiff's "complete Army service record" and allowed these to be destroyed, that any inference must be made in favor of the plaintiff, but such has not been the case. In every instance where review boards have denied plaintiff relief, they have relied upon these "sketchy" records. Despite requesting a complete record of his military service during the pendency of his administrative appeals, the plaintiff was told his records were destroyed in a fire, and some of the documents supplied by the defendant now on CD have never been seen by him previously, despite his FOIA request.

### c. The Army Board for Correction of Military Records Decisions Violate 10 U.S.C. §1552 And Due Process In That They Are Arbitrary, Capricious And Unsupported By Substantial Evidence and Contrary to Law

The defendant's ABCMR[38] denial dated 27 August 1980 was arbitrary and capricious and not in conformance with law. In that decision the board reiterated the defendant's previous reasons for denial in such terms as "It appears the appl was

---

[38] *Statutory Framework* The Army Board for Correction of Military Records is composed of civilians who evaluate former servicemembers' allegations of errors or injustices in their military records. This Board, as well as similar boards for the other branches of the armed services, derives its authority from 10 U.S.C. § 1552(a)(1), which in relevant part provides: The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice.... [S]uch corrections shall be made by the Secretary acting through boards of civilians of the executive part of that military department.

properly and equitably sep w/an undesirable discharge based on his request for disch for the good of the svc." This statement of denial does nothing to address the contentions of the plaintiff in seeking to have his discharge upgraded as outlined in his application. On page two of the same denial form the ABCMR states incorrectly that the plaintiff "in effect pleased guilty to very serious charges" when nothing could be further from the truth. The board further found that "The appl's contention that he did not receive adequate med treatment is not supported by the evidence of record.[39] He was found fit for sep on 9 Jul 71 after undergoing a complete physical and *mental checkup*." The fact is that despite this contention by the board, the record will show that there has never been a "mental checkup" provided to the plaintiff. The same document goes on to include events *subsequent* to the discharge process to justify the plaintiff's discharge characterization, events that occurred in 1973 and were a direct result of the treatment suffered at the hands of the defendant. Because the ABCMR in this decision did not have the plaintiffs "complete Army service record" it states that the plaintiff never reported to Ft. Riley Kansas after Vietnam, but went AWOL directly from Vietnam. Again, not true. The complete Army service record would show that the plaintiff did in fact report to Ft. Riley, Kansas, received his pay there, and consulted with his commanding officer and the protestant chaplain because the Catholic chaplain was unavailable. This court said in Public Citizen, Inc. *v.* FAA*, 988 F.2d 186, 197 (D.C. Cir. 1993) that conclusory statements of the Board in these cases do not meet the requirement that "the agency adequately explain its result." *Public Citizen,* 988 F.2d at 197. Because the Board only listed the facts and stated its conclusions, but did not connect them in any rational way, the Board's decisions are arbitrary and capricious. Where an agency "has failed ... to explain the path it has taken, we have no choice but to remand for a reasoned explanation." Tex Tin Corp*. v.* EPA, 935 F.2d 1321, 1324 (D.C. Cir. 1991). This Court's role in military record cases is a limited one. "It has long been

---

[39] Keep in mind that the Army was <u>still</u> advising the plaintiff (<u>5/20/1982</u>) that his records were only "essential facts of military service" see AR361

established that it is 'beyond the institutional competence of courts to review' the substance of decisions that have been left exclusively to the discretion of the military." Roth, 56 Fed. Cl. at 244 (quoting Lindsey v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002)). See also Groves v. United States, 47 F.3d 1140, 1144 (Fed. Cir. 1995) ("no court is qualified to review the substantive merits of a decision [committed to the discretion of the military], so long as the decision comports with any procedural standards mandated by statute or regulation"). Accordingly, when the Court, in the context of a motion made under Rule 56.1, is "called upon to review a decision of a corrections board, . . . the standard of review is whether the decision is arbitrary, capricious, unsupported by substantial evidence, or contrary to law." Porter v. United States, 163 F.3d 1304, 1312 (Fed. Cir. 1998); see also Wronke v. Marsh, 787 F.2d 1569, 1576 (Fed. Cir. 1986); Sanders v. United States, 594 F.2d 804, 811 (Ct. Cl. 1979); Roth, 56 Fed. Cl. at 245. The ABCMR cannot satisfy its obligation to explain its decision by presenting a laundry list of evidence followed by a conclusion that does not attempt to explain the connection between the former and the latter. Kendall v. Army BD. For Corr. Of Military Records, 996 F.2d 362, at 371. Nor can its decisions be based on facts that do not exist.

The final decision in this case was rendered by the ABCMR in 2004 and it is from this decision that the plaintiff now seeks review by this Court. On page 2 of the decisional document[40] the ABCMR again rests it's decision in plaintiff's alleged "four extended periods of AWOL." As we have shown above, the plaintiff was coerced into any subsequent periods of AWOL by Captain Chrisman and the cadre at the Fort Dix Special Processing Detachment. On page 3 of the document, the ABCMR states that "on 9 July 1971, the applicant completed a separation physical and was found fit for separation. There is no record which shows the applicant had a history of PTSD." This is *of course* the essence of arbitrary, capricious and not based on fact. First, PTSD was

---

[40] AR 304 -309

not even a recognized mental disease, as the defendant is fully aware, until 1980, nine years after the plaintiff was discharged. It *could not* have been in the record and the defendant knows this. Second, there is medical documentation on file[41] that shows that the plaintiff is now and was during the war (in 1969-70) suffering from both PTSD and Major Depression (often seen as a component of PTSD). These disabilities did not disappear during his time at the Fort Dix Special Processing Detachment, and then reappear once the plaintiff was discharged, as the defendant would have us believe now. In fact, paragraph 5 of the same document states:

> "On August 13, 2003, the VA provided a comprehensive evaluation of the applicant's psychiatric history from Vietnam to present time. This evaluation stated, in effect, that the applicant endured a lot of stress and trauma while serving in Vietnam and <u>was suffering from PTSD when he returned from Vietnam</u>."

How then, can paragraph 3 of the same document state that "There is no record which shows the applicant had a <u>history</u> of PTSD?"

Paragraph 7 on page 3[42] describes the reason that the defendant could not be referred for disability processing. It states that he could not be processed for a disability discharge because the defendant had already begun a discharge proceeding against him that could result in a less than honorable discharge. The decision not to "abate" the administrative discharge process in favor of a disability discharge was arbitrary and capricious then, and to suggest that it was not warranted now is unsupported by the facts. First, the separating command demonstrably did <u>not</u> know that the plaintiff, at the time, was a Vietnam veteran and had recently returned from the war.[43] The defendant apparently believed at the time that the plaintiff was a "09B00 – TRAINEE." Second, the

---

[41] see AR 320
[42] see AR 307
[43] see AR 57

defendant did not take into consideration the fact that the plaintiff was under treatment at the Walter Reed Army hospital, at Fort Dix for an illness for which he was prescribed "Librium." Similarly, the defendant did not consider the reason the plaintiff was living in the woods adjacent the company area of the PCF during the time he was there. It is true that some of the time was because there was no bed available within which to sleep, but overall it was due to his PTSD and the inability to sleep in a building that did not have a defensive perimeter around it. And finally, the discharge physical shows "depression and nervousness as well as weight loss." While the defendant goes to great lengths to describe these as symptoms of the discharge process, they are classic symptoms of PTSD.

On page 4 of the decisional document, under "Discussion and Conclusions" at paragraph 1, the defendant states that the citation given in the application[44] "does not apply to soldiers separated under the provisions of chapter 10, Army Regulation 635-200, in lieu of trial by court-martial[45]." It further goes on to state "Since the applicant was not court-martialed, the decision in White v. Secretary of the Army does not apply in this case." Of course, this is "contrary to law" and is thus subject to review by this court. The only difference between the White case, and this case is that in White, his charges *were* referred to a court that could not issue an administrative discharge, and in this case the charges were *not* referred to a court, so we do not know if it could have issued an administrative discharge. In both cases, the effectiveness of the legal advice provided by the defendant was at issue, *see supra*. The defendant, in his motion to dismiss, dismisses this error of law in the ABCMR proceeding by stating that the members of the ABCMR are not lawyers and therefore could not be held responsible to know the law. Since this is

---

[44] White v. Secretary of the Army, 878 F.2d 501 (D.C. Cir. 1989)
[45] see AR 308

ludicrous on it's face, the plaintiff does not have a response to this, except to say that if they did not know the law, they should have asked somebody who does.

Paragraph 2 of page 4 of the ABCMR document repeats the past thirty years of "The evidence of record does not support the applicant's contention that his attorney erred in advising him of his rights. There is no indication that the applicant was coerced or that his rights were violated during the discharge process." Assuming we are talking about Captain Cowart, his advice was correct in one aspect, where on the waiver form the plaintiff's signature should go. Since that was basically the extent of the "advice" given by the captain, then perhaps an argument might be made that his advice was correct. See discussion of the effectiveness of counsel, *supra*. Simply repeating the past thirty years of "The evidence of record does not support the applicant's contention that his attorney erred in advising him of his rights" is not responsive and is arbitrary and capricious. The document states that the waiver was not coerced and was voluntary. In fact, the coercion consisted of the ineffectiveness of the plaintiff's "attorney" in not providing any counsel, guidance, thoughts, ideas, or discussion, or in the basic task of knowing whom his client was or how to proceed in the face of the charge. Coercion was also evidenced by the plaintiff, at the time of the proceedings, suffering from an untreated mental illness, which was admittedly not considered by anyone, including his "attorney." And coercion existed in the process itself. The whole process was geared toward one result. The ridding of perceived undesirables. Everything was geared toward that end, from start to finish. The conditions at the processing unit were inhumane and this was coercive[46]. The Special

---

[46] Remarks of David Addlestone before the Senate Committee considering P.L. 95-126 in 1977:
*3. Discharges for the good of the* service.-Prior to 1966, it was rare for a soldier to be permitted to resign in lieu of trial. The Marines and Navy kept its use extremely limited until 1969 and 1971 respectively. The lack of reliance on this discharge was probably based on the notion that the UCMJ was the means to be

Processing Detachment was not run like a real military unit. There were no assigned quarters, barracks were overcrowded and many soldiers slept on the floor, there was no exchange of dirty clothing, pay was sporadic, at best, and there was nothing to do except mill around and wait to be discharged. Thus, the idea that the process at Fort Dix in 1971 was anything but coercive is arbitrarily false.

The defendant states that the plaintiff "voluntarily requested discharge under the provisions of chapter 10[47]." This request could not have been "voluntary" as it was procured by duress, coercion and the lack of effective assistance of counsel, as described above. Thus, this holding by the ABCMR is arbitrary, capricious and not based upon law or facts.

Paragraph 4 of the same page states *inter alia* that the Army would have helped the plaintiff with his problem but that he did not seek help but had gone AWOL instead "on four separate occasions totaling 340 days." See discussion – **Captain Chrisman**, at

---

used to instill discipline, that soldiers could be rehabilitated, and that it was expensive to allow soldiers to leave the service before performing useful duties. The question then is why was the use of this discharge increased from *424* in *1967* to *29,618* and *24,882* in *1972* and *1973* respectively? Why was the policy changed? Why were people permitted to request such a discharge when facing a court-martial that was not likely to or, in many cases not even authorized to impose a punitive discharge?

The Judge Advocate General of the Army has in the past testified that discharges in lieu of trial ("Chapter Ten") are only given for the most serious offenses. I think that this is not the case, as the statistics cited above clearly indicate. In actual practice, almost all such requests for discharge are accepted, sometimes for arbitrary reasons. For example, I overheard a conversation at Quantico Marine Base JAG office that went something like this First JAG : You can put in your requests for discharge in lieu of trial now. The General is accepting them. Second JAG : Why the change? First JAG : The Base has had a reduction in its authorized strength level. In my experience such reasons are not unusual. The request is no longer given individual consideration. I have seen hundreds of files, and it is as if they were processed on an assembly line. (The Fort Dix Special Processing Detachment is called the "meat grinder" by some Army DRB personnel.) (Some JAG's have told me they were assigned 300 cases in a two-year period during the Vietnam War.) Therefore, it is quite inaccurate to say that the Chapter Ten is reserved only for the most serious offense. The Chapter Ten is a device that has corrupted' the system to everyone's disadvantage: (1) the commander uses it as the easy and cheap way to get rid of anyone s/he wishes; *(2)* the accused uses it as a quick way to get home. Thus, no one gets to work their problems out and no one need exercise real leadership. And the taxpayers pay dearly for it. The use of forms and permanently assigned JAG's to Special Processing Detachments allows assembly-line delivery of the undesirable discharges.

[47] See AR at page 4, para. 3

p. 31 supra. in response to the "four occasions and 340 days." As for the Army's not being given the opportunity to help the plaintiff, the plaintiff did seek help at Ft. Riley. If the record does not show this, then this must be a part of the record that was destroyed in the 1973 fire. Also, the plaintiff sought, and received help at the Ft. Dix Walter Reed Army hospital in December of 1970 and was prescribed Librium. If the Army had, in fact, been interested in the plaintiff's problems upon returning from Vietnam, by their own admission[48] he was in attendance at Fort Dix for a period of about three months during the administrative proceedings in 1970 and 1971. No assistance was offered to the plaintiff during this time, as opposed to what the ABCMR has stated in its denial of 2004. The Army was obviously *more* interested in providing him a stigmatizing discharge than in providing any type of help with his post war problems. Denial of relief on this basis is therefore arbitrary and capricious and not based upon facts or law.

The most confusing statement in the denial document occurs in paragraph 5 of page 4. In it, the defendant states:

> "The evidence of record shows the VA has now diagnosed the applicant with PTSD and related it to his Vietnam serive. Although the VA related his PTSD to his Vietnam service, there is no indication in his military records that he was suffering from PTSD at the time of his discharge from the military…"

Besides being contradictory on its face, the statement fails to recognize that the plaintiff served in Vietnam before he was discharged. In fact, plaintiff's Vietnam service began in May of 1969 and ended about one year later. He was not discharged until 1971. Service in the Vietnam War was therefore an intervening factor. Such a ludicrous statement is arbitrary and capricious on it's face and is contrary to facts and the law. It is also

---

[48] See AR 21-22

heartbreaking to see the non-sensical way the defendant's discharge review boards respond to questions presented to them. Following such an *amazing* response, who would resort to them for an impartial, intelligent, or a reasoned consideration?

In Chappell *v.* Wallace*,* 462 U.S. 296 (1983), the Supreme Court held that when a Board reviews the merits of a former servicemember's application under § 1552(a)(1), the decision is subject to judicial review. *Id.* at 303 ("Board decisions are subject to judicial review and can be set aside if they are arbitrary, capricious, or not based on substantial evidence."). It is instructive that *Chappell* held that Board decisions to correct or not correct a military record are reviewable despite the fact that § 1552(a)(1) provides that the Secretary "*may* correct any military record." 10 U.S.C. § 1552(a)(1) (emphasis supplied). The ABCMR has the discretion to correct military records to prevent injustice. See Wolfe v. Marsh, 835 F.2d 354, 358 (D.C. Cir. 1987). However, a review board's failure to exercise its discretion under the appropriate circumstances is subject to judicial review under the APA. See also Dougherty v. U.S. Navy Bd. for Correction of Naval Records, 784 F.2d 499, 500 (3d Cir. 1986). "The district court is to set aside the [agency's] action if it finds it to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" See id. at 501 (citations omitted). The district court must also determine whether the agency's decision was supported by substantial evidence and whether the agency considered all of the proffered evidence. See Mozur v. Orr, 600 F. Supp. 772, 776 (E.D. Pa. 1985); Smith v. Dalton, 927 F.Supp. 1, 5 (D.D.C.1996). See Matlovich *v.* Secretary of the Air Force, 591 F.2d 852 (D.C. Cir. 1978), the court found that the decisions of both the administrative discharge board and the Air Force's equivalent of the BCNR failed to provide a reasoned explanation for the

service branch's actions sufficient to demonstrate that the Air Force had not been "arbitrary, capricious, or unlawful in exercising its discretion." 591 F.2d at 857; see generally id. at 853-61. The courts have likewise recognized that decisions of the military correction boards are subject to judicial review. See Chappell *v.* Wallace, 462 U.S. 296, 303 (1983) (correction board decisions "are subject to judicial review and can be set aside if they are arbitrary, capricious, or not based on substantial evidence").

## CONCLUSION

Based upon the foregoing facts and reasons, and because the plaintiff has shown that this Court has subject matter jurisdiction over his claims and that he has stated a claim upon which relief can be granted, defendant's motion to dismiss this action for failure to state a claim should be denied. Further, defendant's motion for summary judgment should be denied as there exists a genuine issue as to material facts and the defendant is not, as a matter of law, entitled to judgment.

Respectfully Submitted,

_____/s/_____
Gilbert Bland, Pro Se
4725 Dorsey Hall Dr., A504
Ellicott City, MD 21042
(410) 300-6502

45