UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| GILBERT BLAND (Pro-Se): | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- : | )       CIVIL ACTION NO. 05-2143 (HHK) |
| | ) |
| SECRETARY OF THE ARMY: | ) |
| | ) |
| Defendant. | ) |

_____)

**PLAINTIFF'S REPLY MEMORANDUM IN RESPONSE TO DEFENDANT'S
REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS, IN PART, AND FOR SUMMARY JUDGMENT**

Comes the Plaintiff in the above-entitled action, in Proper Person, and pursuant to

Local Rules of Civil Procedure LCvR 7 (d) files this, his response to the Defendant's

reply aforesaid.

**I. The Court Has Jurisdiction Over Plaintiff's Mandamus Claim**

In order to receive Mandamus relief, the plaintiff has shown that he has a clear

right to the relief sought. In taking the action against the plaintiff that was conducted

from August 1971 to date, the defendant was required to provide due process as

guaranteed bythe Fifth Amendment to the Constitution when it sought to punish him and

to extinguish the property and liberty interest he had in his good name and reputation in

the community. The defendant has now stated  "Plaintiff was not entitled to counsel

under the Sixth Amendment in connection with his Chapter 10 discharge request as the

administrative discharge process is not a criminal proceeding in which a person can be

sentenced to confinement."[1] This is a departure from the past thirty-five years of refusals and denials, which have always maintained that the Plaintiff was provided "counsel" during the proceedings. At the minimum, the Plaintiff had a Constitutionally protected right to his continued employment in the Army until such time as his contract had expired, absent sufficient cause to effect his premature dismissal.[2] The Supreme Court has addressed this issue in the case of GOSS ET AL. v. LOPEZ ET AL., 419 U.S. 565, where it said:

> "The Due Process Clause also forbids arbitrary deprivations of liberty. "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him," the minimal requirements of the Clause must be satisfied."

Paul v. Davis, 424 U.S. 693 (1976), holds that injury to reputation, standing alone, is not enough to demonstrate deprivation of a liberty interest. See id., at 712. Paul also establishes, however, that injury to reputation does deprive a person of a liberty interest when the injury is combined with the impairment of "some more tangible" government benefit[3]. Id., at 701. It is enough, for example, if the plaintiff shows that the reputational injury causes the "loss of government employment," id., at 706, or the imposition of a legal disability, such as the loss of "the right to purchase or obtain liquor in common with the rest of the citizenry," id., at 708 (citing Wisconsin v. Constantineau, 400 U.S. 433 (1971)). See also Cafeteria Workers v. McElroy, 367 U.S. 886, 898 (1961); Board of Regents of State Colleges v. Roth, 408 U.S. 564 (1972).

---

[1] See "Defendant's Reply to Plaintiff's Opposition…" p. 11, para. 2
[2] *Goldberg* v. *Kelly*, 397 U.S. 254 (1970). *Morrissey* v. *Brewer*, 408 U.S. 471 (1972)
[3] Here, the Plaintiff has been denied all V.A. "gratuitous" benefits as well as medical treatment for his hearing loss sustained in Vietnam.

The defendant does not argue that the imposition of an Undesirable Discharge causes a loss of employment from the military, stigmatized the individual in seeking future employment and forecloses employment, educational, health and numerous other benefits awarded those not so stigmatized. The Plaintiff has thus shown that the interests negatively affected by the actions of the defendant fall within the protection that due process provides under the Constitution and that he should have been provided due process by the Defendant, which they have now agreed they have not. The first requirement for the Court's Mandamus remedy has been satisfied.

The Defendant had a clear duty to Act. This duty began when the Plaintiff returned from the war in Vietnam. Having suffered the consequences of that war and being psychologically and physically damaged as a result of his service, he was entitled to medical care. As shown in the pleadings, the only care he received was a prescription for Librium at the Walter Reed Army Hospital's emergency room. Plaintiff does not believe that the Defendant would argue that it has a general responsibility to treat soldiers wounded in war, so no argument on that point will be given here.

The duty to act continued when the Defendant took action to separate him from the Army. As stated above, the Plaintiff had a Constitutionally protected interest in his continued employment with the Army, and in his liberty and property interest in his reputation in the community and his ability to secure future employment, medical care, and benefits afforded similarly situated individuals. Thus, the administrative proceedings should have included, as a minimum, effective assistance of counsel, not just a chart of

lost veterans benefits and the placement of a signature on a waiver. Today, AR 635-200

Chapter 10 (6 June 2005) requires a statement[4] from the individual that

> "I have consulted with counsel for consultation who has
> fully advised me of the nature of my rights under the Uniform
> Code of Military Justice, the elements of the offense(s) with
> which I am charged, any relevant less included offense(s) thereto
> and the facts that must be established by competent evidence
> beyond a reasonable doubt to sustain a finding of guilty, the
> possible defenses that appear to be available at this time…"

Had the Plaintiff been afforded these rights during his administrative proceeding, the

Defendant might have been apprised of the fact that the Plaintiff was a Vietnam veteran,

had just returned from the war, and may have been suffering from the psychological

effects of that war. A competent lawyer would have demanded no less. Instead, there was

never a discussion of the nature of the Plaintiff's service, or possible disabilities, and the

separating command knew nothing of the Plaintiff's service in Vietnam.

Even though, as it now appears, that the Plaintiff was not even entitled to the

effective assistance of counsel during the discharge process, as stated by the Defendant,

the Supreme Court has held in Harmon v. Brucker, 355 U.S. 579 that a service member's

discharge must be based upon the "*records of military service*." Further, the court said:

> "We think the word "*records,*" as used in the statute, means
> *records of military service*, and that the statute, properly con-
> strued, means that the type of discharge to be issued is to be
> determined solely by the soldier's military record in the Army."

Id at 583.

As shown in "PLAINTIFF'S STATEMENT OF MATERIAL FACTS TO

WHICH THERE IS A GENUINE DISPUTE," pages 1 through 5 inclusive, the

Administrative Record ("A.R.") itself is in dispute and does not contain the Plaintiff's

---

[4] See attached "Request For Discharge for the Good of the Service" Plaintiff's exhibit 'A'

"complete Army service record[5] but only the "essential facts of military service." Positive references are absent, while decidedly trivial negative references are carefully included. During the discharge process the characterization of Plaintiff's service was not based upon his service record either, as it failed to include reference to his advanced schooling, his service in Vietnam, and the decorations he earned. All, arguably material factors, which should have been weighed, but were not. Instead, the Plaintiff was *thought* to be a "0900B TRAINEE."[6] Thus, the Plaintiff has met the second requirement for Mandamus, a showing that the Defendant had a clear duty to act, by discharging him based upon the actual records of his service, and in subsequent reviews by basing the decisions on his actual military records, and law, not excerpts constructed by the Defendant to justify an illegal discharge proceeding.

The third test for the Court's ability to fashion a Mandamus remedy consists of the absence of a full and complete remedy under the Administrative Procedure Act ("A.P.A."). While the Court *could* send the case back to the Army Board for Correction of Military Records ("A.B.C.M.R.") the A.B.C.M.R. has had several occasions in the past to rectify this injustice but has consistently failed to do so. The Plaintiff has no confidence that to return the case to the A.B.C.M.R., absent the additional remedy of Mandamus requiring the necessary and required action on the part of the A.B.C.M.R. to correct the Plaintiff's discharge, would result in a different result. The Plaintiff has now suffered thirty five (35) years of rejection at the hands of the Defendant and his review boards and has lost all hope of obtaining a fair and just result.

---

[5] See AR 361
[6] See AR 57

The Defendant cites the case of <u>Levant</u> v. <u>Roche</u>, 384 F. Supp. 2d. 262, in support of his argument that Mandamus is unavailable to this Court. In the Levant case, a retied Air Force General was suing the Secretary of the Air Force for not promoting him to Major General. This was not a case involving the imposition of a life long stigma by the Air Force. And in the Levant case, he failed to show that the Secretary had acted arbitrarily, capriciously, or not in accordance with law, id. at 269. The cases are distinguished on this basis alone. Further, General Levant "had not established a clear nondiscretionary obligation on the part of defendants to "perform a duty owed to the plaintiff"" id. at 271. In the instant case, the plaintiff has established a "non discretionary obligation" on the part of the defendant to follow the Constitution of the United States (U.S.C.A. V, VI) and the Uniform Code of Military Justice, *as amended* before depriving him of his Constitutionally protected rights and liberties. Similarly in <u>Piersal</u> v. <u>Winter</u>, 435 F.3d 319 (D.C.Cir. 2006) while the court discusses the applicability of the A.P.A. to claims against the military's review boards, it does not state that the availability of one remedy forecloses the availability of another (here, Mandamus).

In a First Amendment discussion by the Court in <u>Hodges</u> v. <u>Callaway</u>, 499 F.2d 417 (5th Cir. 1974) the court said:" If a soldier's discharge is found to be violative of the Constitution, the implicit but clear non-discretionary duty of the respondents is to reinstate the soldier upon learning of the unconstitutional nature of the discharge. Any contrary conclusion would render the extensive procedural safeguards in the Army regulations meaningless, and would create a large loophole through which Constitutional scrutiny of the discharge process would be rendered ineffective. The Court finds <u>mandamus</u> to be an appropriate remedy available to the petitioner in this case."

6

## II. The Statute of Limitations Found in 28 U.S.C. § 2401(a)
## <u>Does Not Apply to This Case</u>

First, as stated in the Plaintiff's reply memorandum to Defendant's Motion to Dismiss, etc., this case is about the denial of relief by the A.B.C.M.R. in 2004, it is <u>not</u> about the discharge review board decisions of 1974, 1978, and 1983 (or 2000). While it is apparent that the denial of the Plaintiff's 2004 appeal to the A.B.C.M.R. is based upon previous denials, it is now apparent that none of these denials were based upon the Plaintiffs actual military service records as they were unavailable to any of these boards. While there is a connection in theory to the instant case, and while the Plaintiff disagrees, of course, with these past decisions, it is the final decision by the A.B.C.M.R. with which the Plaintiff takes issue.

As this case was filed within any applicable period of limitations that could be claimed by the Defendant, the Court does indeed have jurisdiction. As stated by the Courts, the limitation period begins to run on the date of the final agency review of the controversy. The wrong asserted in this Court is not the discharge itself, but it's treatment by the A.B.C.M.R. Plaintiff's discussion of the discharge and the discharge process were only conducted to show how and why the actions of the <u>A.B.C.M.R.</u> were illegal. In <u>Geyen</u> v. <u>Marsh</u>, 775 F.2d 1303 (5th Cir. 1985) that plaintiff had been given an Undesirable Discharge by the Army in lieu of a court-martial after going AWOL. Ten years later he petitioned the Army Board for Correction of Military Records ("A.B.C.M.R."). The A.B.C.M.R. denied his claim and Geyen sought review in the district court. The district court dismissed, based on the six year statute of limitations, 28 U.S.C. § 2401 (1978). The Court of Appeals for the Fifth Circuit reversed, holding that an action for review of a decision of a military board such as the A.B.C.M.R. accrues at a

different time than an action directly challenging the circumstances of a discharge. The

Fifth Circuit found that review of the A.B.C.M.R. decision was timely, as stated in

Dougherty v. U.S. Navy BD. For Corr. Of Naval Rec., 784 F.2d 499 (3rd Cir. 1986)

that:

> " We agree with the Fifth Circuit that the cause of action
> for review under the arbitrary and capricious standard of
> the military board's decision in a non-monetary case accrues
> at the time of the unfavorable ruling by the BCNR. *Accord*
> Schmidt v. United States, 13 M.L.R. 2075 (N.D. Cal. 1984);
> Kaiser v. Secretary of the Navy, 525 F. Supp. 1226 (D. Colo.
> 1981); Mulvaney v. Stetson, 470 F. Supp. 725 (N.D. Ill. 1979)."

Id. at 502. As the Defendant raises Walters v. Secretary of Defense, 725 F. 2d 107 (D.C.

Cir. 1983) in support if his assertion that the limitations period contained in 28 U.S.C. §

2401 does indeed apply to equitable actions[7] the Plaintiff would show the discussion of

the Court in the Dougherty case (cites supra) is on point:

> "We have not overlooked *Walters* v. *Secretary of Defense,*
> 725 F. 2d 107 (D.C.Cir. 1983), where the Court of Appeals
> for the District of Columbia Circuit found a class action
> seeking to upgrade discharges barred by the six-year statute
> of limitations. In that case, review of the discharge itself
> was sought and not review of any correction board action.
> The Court said: "We need not and do not decide whether,
> had a named plaintiff sought and received a final decision
> from a discharge review board, the statute of limitations
> could have been tolled in any way." Id. at 115."

Dougherty at 502. While the decision of the Dougherty court is not controlling on this

court, it is persuasive. See also Impro Products, Inc. v. Block, 722 F.2d 845, at 850 "In

the agency context, the logical inference is that the cause of action accrues when all

statutorily required or permitted agency review has been exhausted." In this case, the

---

[7] See "Defendant's Reply to Plaintiff's Opposition…" p.3, para. 2 – p.4, para. 1

exhaustion of "statutorily required or permitted agency review" was exhausted on September 14, 2004 in A.B.C.M.R. decision AR2003095266.

The Second Circuit addressed the issue in Blassingame v. Secretary of the Navy, 811F.2d 65, 68 (2d Cir. 1987). A Vietnam veteran sought upgrade of an undesirable discharge to an honorable discharge. The Navy's Correction Board (as well as its Discharge Review Board, see 10 U.S.C. § 1553(a)) had denied relief. Thirteen years after his discharge, but within one year of the Correction Board decision, suit was brought in federal district court. The district court held, inter alia, that the statute of limitations barred the suit to review the decision of the Correction Board. The Court of Appeals reversed, holding: (1) since the veteran had expressly relinquished his demand for monetary damages, appeal was properly in the Second Circuit, and not in the Federal Circuit under the Tucker Act; (2) the jurisdiction of the district court lay under 28 U.S.C. § 1331(a), federal question jurisdiction, and APA § 702, waiver of sovereign immunity; (3) the six year statute of limitations for civil actions against the United States, 28 U.S.C. § 2401(a), applies, but the cause of action accrues *at the time of the Correction Board decision,* not, as the Government argued and the district court held, from the time of the underlying discharge. In reaching that conclusion, the Second Circuit reviewed the history of the 1940s legislation establishing the several boards, and the development since then of judicial review of agency action under the APA. The court noted particularly the emphasis placed by the Supreme Court in Harmon v. Brucker, 355 U.S. 579 (1958), on judicial review of agency action unless there is clear and convincing evidence that Congress intended to foreclose such review. Blassingame, 811 F.2d at 71.The court pointed out that the Government's view to the contrary would in some

circumstances preclude altogether judicial review of Correction Board action. That circumstance, the court noted, could occur in a number of ways. For example, by statute veterans have fifteen years to take certain discharge cases to the Discharge Review Board, 10 U.S.C. § 1553(a), and three years after that to appeal the Review Board's decision to the Correction Board, 10 U.S.C. § 1552(b). Under the Government's view, a veteran whose board reviews were completed within six years from the date of discharge could obtain judicial review, but a veteran whose board reviews extended beyond that would be denied any judicial review. As the court emphasized, that created disparate results, and was inconsistent with Harmon in that there was no reason to think Congress intended to preclude judicial review of agency action in that fashion. Blassingame, 811 F.2d at 71-72.

In reaching its conclusion that the cause of action accrues at the time of the Correction Board decision, not at the time of the underlying discharge, the Second Circuit followed with approval the same conclusion reached in similar cases in the Third, Fifth, and Tenth Circuits. See Dougherty v. United States Navy Bd. for Corr. of Naval Records, 784 F.2d 499 (3d Cir. 1986); Geyen v. Marsh, 775 F.2d 1303 (5th Cir. 1985); Smith v. Marsh, 787 F.2d 510 (10th Cir. 1986). The decision of the Second Circuit, citing that of the Fifth, particularly noted that review of a Correction Board decision should be distinct from direct review of the underlying discharge because, although the factual record may be similar, the focus of the former is on the action of the Correction Board rather than on that of the discharge officials. Blassingame, 811 F.2d at 72; Geyen, 775 F.2d at 1308-09. As in the case before us, the Correction Board may consider evidence not in the original record, 32 C.F.R. § 581.3(c)(2)(iii), and, in cases in which the veteran was required to

apply first to a Discharge Review Board, it must also consider policy and procedure changes implemented subsequent to the discharge. Geyen, 775 F.2d at 1308-09 (citing 32 C.F.R. § 70.9(c)(1), which provides Army Discharge Review Board standards); see also Blassingame, 811 F.2d at 72-73 (citing 32 C.F.R. § 724.903, which provides Naval Discharge Review Board standards). The issue for judicial review as these courts see it is whether, on the factual record before the Correction Board, its decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706; Blassingame, 811 F.2d at 72; Geyen, 775 F.2d at 1309.

A final thought on the applicability of the statute of limitations is that since 1970, the plaintiff has been impeded in his thought processes, reasoning, and actions by the Post Traumatic Stress Disorder ("PTSD") and major depression he developed in Vietnam. It went largely untreated until 1994 when the V.A. began to treat his disease. To hold the plaintiff to the same standard of legal diligence as one who suffers no disabilities would seem unfair. And it was not until the Defendant filed his "Administrative Record" in the instant case, that the Plaintiff realized the depth of information and records missing from his military records. If it was the Plaintiff who was the custodian of these records and allowed only the negative records to be destroyed and then carefully maintained the positive ones for later use in these administrative proceedings, the Defendant would rightly be entitled to relief on that basis alone. It is now quite clear why the decisions that were taken through the years were taken. When only one side of an argument is presented the outcome is pre-ordained.

On page 5 of Defendant's "Reply to Plaintiff's Opposition…" he states, "In rare circumstances, a court will invoke the doctrine of equitable tolling. The doctrine has been applied where a plaintiff has actively pursued his judicial remedies, but filed a defective pleading during the statutory period, or where a plaintiff has been induced or tricked by *his adversary's misconduct* into allowing a filing deadline to pass." While the Plaintiff does not argue the statute of limitations application here, as the suit was filed within 16 months of the final review by the A.B.C.M.R., it is now apparent that the records used during the past thirty years to deny him relief were incomplete. The loss of these records, while not intentional, did in fact prejudice the previous decisions of the boards, and also denied the Plaintiff a meaningful opportunity to present any case to a court of competent jurisdiction. Since it is argued here that the record is everything, then a suspect record, or an incomplete record denies the plaintiff a reasonable right to appeal the administrative decisions and for this Court to make a reasoned decision on the facts.

On page 6 of Defendant's "Reply to Plaintiff's Opposition…" he states that "The Army did nothing to interfere with plaintiff's freedom to file and judicial or administrative action he chose." The Plaintiff would submit to the Court that in allowing his "complete Army service record" to be destroyed in a fire, and then using only "essential facts of military service" to deny him relief did interfere with the Plaintiff's ability to present meaningful appeals to the review boards, or to a court, as all of these efforts are of necessity based upon his "complete Army service record" which does not exist.[8]

### III. Plaintiff's Request for Reinstatement or Honorable Discharge is Justiciable

[8] see A.R. 361

12

Plaintiff would respond to Defendant's argument regarding justiciability, first that in finding the discharge was issued illegally, that he has never been discharged at all and continues to be in service, see <u>Dilley</u> v. <u>Alexander</u>, 627 F.2d 407, 411 (D.C. Cir. 1980) "If Steffan was discharged wrongfully he has never been discharged; …in the eyes of the law he remains in service" see also <u>Tippett</u> v. <u>United States</u>, 185 F. 3d 1250, 1255; <u>Clackum</u> v. <u>United States</u>, 296 F. 2d 226, 229 (D.C. Cir. 1999); <u>Egan</u> v. <u>United States</u>, 158 F. Supp. 377, 386 (Ct. Cl. 1958). As the District of Columbia Circuit said in it's clarifying opinion in Dilley (cites supra), "…the constructive service doctrine is a "Legal Fiction:" "as appellants have never been lawfully terminated from active duty, they are deemed to have served during the time of their illegal release."" 627 F.2d at 413. Therefore, should the Court find the Plaintiff's discharge was in fact issued illegally; there would be no need to reinstate the Plaintiff, as he has never been discharged.

As the Defendant raises the issue that reinstating the Plaintiff would impact "internal military matters, particularly matters involving discipline, morale, composition of the force, and personnel matters" the Plaintiff would show that properly re-characterizing the Plaintiff's discharge to Honorable would have little effect on any of these "internal military matters." This Court said in <u>Miriam Ben Shalom</u> v. <u>Secretary of the Army</u>, 489 F. Supp. 964, "I also conclude that if petitioner's discharge is determined to be unconstitutional, <u>the duty to reinstate her is clear</u>."

Defendant further states that the Plaintiff "had every opportunity to present such evidence[9] during his numerous resorts to corrections boards.[10] Plaintiff states that he was unaware that he had the capability to compel testimony through subpoenas issued by the

---

[9] Compelled testimony from witnesses; medical testimony from medical professionals; discovery of standards, policies, procedures, orders in place at Ft. Dix at the time of Plaintiff's discharge, etc.
[10] See "Defendant's Reply to Plaintiff's Opposition…" pp 7 -8

A.B.C.M.R., or to conduct discovery under the Rules of Evidence applicable to such boards. Plaintiff further states that during many of the times he has waited, sometimes for years, for a decision from these boards, he was unemployed, was still untreated for his service connected disabilities, and did not have the wherewithal to employ expert medical witnesses to appear before such boards, had a hearing been conducted. Therefore, his poor showing at the boards was not a "choice" as suggested by the Defendant, but ignorance of the considerable rules of discovery and procedure, which are apparently now in effect. The one time the Plaintiff *did* request copies of his service records in order to perfect an appeal, he was provided with a few documents, which contained little of his actual military records and consisted of considerably less than has been filed by the Defendant in his "Administrative Record."

Defendant states on page 8 of his "Defendant's Reply to Plaintiff's Opposition…" that "Review in this case is limited to the administrative record, and it supplies ample evidence to support the findings of the correction boards, and for the Court to enter judgment in favor of Defendant." Plaintiff, in response, would incorporate by reference his remarks regarding the administrative record in this case found in his "PLAINTIFF'S STATEMENT OF MATERIAL FACTS TO WHICH THERE IS A GENUINE DISPUTE," at pages 1 through 5 both inclusive. The said "Administrative Record" is so bereft of anything positive regarding the Plaintiff's service in Vietnam that it should be disregarded. Such material is missing from the record and the only response from the Defendant is that it was destroyed in a fire, but somehow a speeding ticket obtained in Vietnam was not. The Plaintiff does not know how to respond to that.

Defendant states in his "Defendant's Reply to Plaintiff's Opposition…" on page 9 that "There was no requirement that plaintiff's charges *actually* be referred to a court martial prior to his submission of a discharge request. This is in conflict with AR 635-200 Ch. 10–2. Personal decision (a.) "Commanders will ensure that a soldier is <u>not coerced</u> into submitting a request for discharge in lieu of trial by court-martial." It is obvious that if the service member faced with this choice does not choose to waive his rights to trial by court-martial, that any charges will then be *actually* referred to a court martial which by definition would normally impose a penalty in excess of that contemplated by the administrative discharge. It is illogical to presume that this is not the *essence* of coercion. And in the case of the Plaintiff here, other forms of coercion existed in the existence of his service-connected disabilities, the conditions at Ft. Dix, and the process itself. To be sure, no one is expecting the process to be fair, or the Army to be compassionate, but the Army must follow it's own rules, including AR 635-200 Ch. 10 – 2 (a), which *was* in effect at the time, as was U.S.C.A. V and VI.

On page 10 of "Defendant's Reply to Plaintiff's Opposition…" in paragraph 2, the Defendant speculates that the Plaintiff's AWOL charge may have probably been referred to General Courts-Martial. First, if this had been the case, Army regulations in effect at the time would have required that the Plaintiff be provided *real* effective assistance of counsel. A real attorney would have noticed that the Plaintiff had just returned from Vietnam and had a problem that he didn't have *before* going to Vietnam. He could have then sought a psychiatric evaluation and possibly had the commanders at the Special Processing Detachment process the Plaintiff for a medical discharge as he was clearly *at that time* unfit for further duty. Such speculation is pointless now because

the charges were <u>never</u> <u>referred</u> and the Plaintiff was <u>not</u> entitled to a lawyer, as stated by the Defendant. The plaintiff would be able to show at trial that the number of AWOL charges referred in 1971 at Ft. Dix to General Courts-Martial was small, if any.

Also on page 10 of "Defendant's Reply to Plaintiff's Opposition…" in paragraph 2 that Plaintiff argues that he went AWOL twice after December 1970 so that he could obtain an administrative discharge. In reality Plaintiff did not want an administrative discharge. He wanted treatment for his service-connected disabilities so that he could complete his enlistment and then have a normal life, an education, and a career. But those choices were never presented to the Plaintiff.

As far as Captain Chrisman's advice, the Defendant claims that this somehow calls into question the Plaintiff's claims regarding the events surrounding his discharge in 1971. Perhaps the Plaintiff might obtain evidence from Capt. Chrisman and/or the hundreds of soldiers he similarly counseled during 1970-1971 at Fort Dix and introduce this into evidence at trial. On page 32 of Plaintiff's Opposition Memorandum, he stated about Capt. Chrisman "I am <u>not</u> advising any one of you to go AWOL…" While this is obviously a paraphrasing of the Captains presentation, it is accurate, it is based on facts, records, and policies in effect at Fort Dix at the time of Plaintiff's discharge and can be easily presented as evidence in this Court through witness statements, testimony and written policy statements. It is also a matter of record[11] in this case that the charges for which Capt. Chrisman was seeking a waiver <u>were</u> referred to a Special Court Martial, but the charges for which Capt. Cowart obtained his waiver <u>were</u> <u>not.</u>[12] The facts speak for themselves. It is not a matter of belief or disbelief; it is a matter of policy.

---

[11] See A.R. 78-81
[12] see A.R. 85-88

**IV. The Decision of the A.B.C.M.R. Was Arbitrary,**
<u>**Capricious and Not Based on Law or Facts.**</u>

Again, the Defendant relies upon the "Administrative Record." On page 12 of his

"Defendant's Reply to Plaintiff's Opposition…" he states that "The board conducted a

thorough review of Plaintiff's *service* and medical records, and concluded that there was

no evidence Plaintiff was unable to make conscious decisions with regard to his

conduct." Since the board did not have the Plaintiff's service records, this statement is

suspect. On page 13 of  "Defendant's Reply to Plaintiff's Opposition…" he again

suggests that because the plaintiff had obtained work in a tropical fish establishment that

this somehow translates into a finding that the Plaintiff's alleged AWOL was "willful."

This has been thoroughly discussed in Plaintiff's Reply to the Defendant's Motion to

Dismiss, etc. Again, the findings of the 2004 A.B.C.M.R. are properly before the court

and the Plaintiff will be able to provide expert medical testimony regarding the

"willfulness" and it's connection to tropical fish and is eager to do so. Plaintiff did not

make an argument to the A.B.C.M.R. concerning the tropical fish aspect as it was not an

issue until the Defendant sought to make it one. The Defendant raises this in defense and

to show that the Plaintiff acted willfully in his alleged AWOL. It is now properly before

the Court and the Plaintiff should not be precluded to establish that the argument of the

Defendant in this regard is specious.

On page 13 of "Defendant's Reply to Plaintiff's Opposition…" at para. 3, the

Defendant makes that argument that "The ABCMR clearly reviewed plaintiff's medical

reports and the statements he provided from the VA as the board discussed these

documents in its memorandum of consideration. AR 307-308. The ABCMR simply did

not find this evidence persuasive in light of <u>contradictory evidence</u> of record regarding plaintiff's actions at the time." But the ABCMR decision document does not indicate to which, if any "contradictory evidence" the Defendant is now referring. None is cited in the decisional document.

The Defendant goes on to suggest that because the ABCMR is a body of non-lawyers, their incorrect interpretation of the <u>White</u> case[13] is unfortunate but is nonetheless inconsequential. The Plaintiff has written about the applicability of the White case to this case and will not re-state it here. What is of consequence here is that the Defendant states that the case law from the U.S. District Court for the District of Columbia is in no way binding on the board's decision[14]. It would seem that the principal of stare decisis would require that the legal interpretations of this Court are in fact binding on the decisions of the A.B.C.M.R. as are those of the Court of Appeals for the District of Columbia.

Decisional document AR2003095266 begins on page 1 with a statement that "The Board considered the following evidence: Exhibit B – Military Personnel Records (including advisory opinion, if any)." The problem with this is that the Military Personnel Records do not consist of the "complete Army service record" of the Plaintiff, but are only "the essential facts of military service." See A.R. 361. Even these "the essential facts of military service" do not include positive records and documents that *should* be included in the record but are not. Examples of these are given in "PLAINTIFF'S STATEMENT OF MATERIAL FACTS TO WHICH THERE IS A GENUINE DISPUTE," at pages 1 through 5 both inclusive. Absent reliance on accurate records, this

---

[13] *White* v. *Secretary of the Army*, 878 F.2d 501 (D.C. Cir. 1989)
[14] See "Defendant's Reply to Plaintiff's Opposition…" p. 14, para. 2 "While it is unfortunate that the ABCMR, a body of non-lawyers, misunderstood the Court's holding in that case, there finding is not contrary to law <u>as the case was in no way binding upon the board's decision</u>."

would render such a decision *by nature* arbitrary and capricious because they are not based upon an accurate record.

On page 2 of decisional document AR2003095266, the A.B.C.M.R. states under "CONSIDERATION OF EVIDENCE:" 1. Incorporated by reference are military records, which were summarized, in the previous consideration of the applicant's case by the Army Board for Correction of Military Records (ABCMR) in Docket Number AR2000041584 on 22 August 2000. This suggests that the 2004 ABCMR relied on the denial issued by the 2000 board in it's denial in 2004 and that it was again based upon "military records" which are incomplete, biased and suspect. A denial based upon a previous denial is arbitrary and capricious and does not afford a fair and impartial consideration of the issues presented.

For the record, while page 2, para. 2 of the decisional document states that "The applicant's military personnel records show he has four extended periods of AWOL" the plaintiff states that the "applicant" has <u>never</u> been convicted of, or pled guilty to the crime of AWOL and that in fact he has an affirmative defense to these charges. This does not include the minor infraction of leaving a school lunch formation early in order to have a better place in line, of course.

In justifying it's denial, the A.B.C.M.R. on page 3, para no. 3 of the decisional document AR2003095266 states, in part, "There is no record which shows the applicant had a history of PTSD." As PTSD was not knows as such in 1971, the record <u>could</u> <u>not</u> <u>have</u> shown a history of PTSD, and the A.B.C.M.R. if fully aware of this. The A.B.C.M.R. could have exercised it's discretion in finding that while PTSD was not known as such in 1971, that it and it's effects were now (in 2004) known, and since the

applicant has several diagnosis, all signed by licensed medical doctors, which attribute

his PTSD directly to his Vietnam war service, some consideration could have been given.

But for reasons unknown to the Plaintiff, it was not. But to state in its denial document

that there was no record of something that they knew did not exist is arbitrary and

capricious and ignores reality.

Paragraph 7 on page 3 of decisional document AR2003095266[15] describes what

*should have* taken place in the case of the plaintiff, if (1). The Defendant had known that

the Plaintiff was a recently returned veteran of the Vietnam war; and (2). He had any type

of minimal legal counsel who might have requested such processing as that described in

para. 7 or at least medical treatment.


### VI. The "Discussion and Conclusions" Stated as Reasons for Denying the Plaintiff Relief by the ABCMR are Arbitrary, Capricious, Contrary to Law and an Abuse of Discretion

The "Discussion and Conclusions" referred to below take place in A.B.C.M.R.

decisional document AR2003095266, page 4. Paragraph 1 addresses the A.B.C.M.R.'s

interpretation of the White[16] case. As the Defendant has previously agreed, the

A.B.C.M.R.'s reading of the case is mistaken in that the board believed that the case does

not apply to Chapter 10 discharges. Most significantly here, is the A.B.C.M.R.'s decision

that "Since the applicant was not court-martialed, the decision in White v. Secretary of

the Army does not apply in this case." The plain language of this statement is that the

*reason* White does not apply to the Plaintiff's case is that he was not court-martialed,

with no other distinguishing fact considered. Here, the A.B.C.M.R. has stated its reason

---

[15] AR 304-309
[16] *White* v. *Secretary of the Army*, 878 F.2d 501 (D.C. Cir. 1989)

for it's finding that White does not apply, and it is wrong. Of course, Mr. White was not court martialed, and White does indeed apply to Chapter 10 discharges. This renders this part of the decision Contrary to Law. The White case remains good law in the District of Columbia circuit and should be followed. As stated previously by the Plaintiff, the only difference between the White case and that of the Plaintiff herein, is that in White, his AWOL charge was referred to a court that could not issue a punitive discharge, and in the case here, the AWOL charge was not referred to a court at all. All other salient aspects of both cases remain the same.

Para. 2 of page 4 begins with the statement "The evidence of record does not support the applicant's contention that his attorney erred in advising him of his rights." First, the "record" maintained by the Defendant is suspect. Then, the statement suggests a fantasy. What possible form could an attorney's error in advising his client of his rights take? Would there be a statement in the record by the attorney to the effect that "I erroneously advised my client of his rights?" How long would such an attorney remain an attorney? Where, if the statement were true, would it come from? An examination of this statement would reveal two necessary elements, first, what were the applicant's rights and second, what rights were explained by the attorney. The Defendant herein has already conceded that no legal counsel was provided because none was authorized[17] and in fact there was no legal counsel offered to the Plaintiff during the discharge process. So, first the A.B.C.M.R. states in it's denial that there was no error in the record showing that the Plaintiff's counsel erred in advising him of his rights, and then the Defendant states

---

[17] See Defendant's Reply at p. 11, para 2. "Plaintiff was not entitled to counsel under the Sixth Amendment in connection with his Chapter 10 discharge request as the administrative discharge process is not a criminal proceeding in which a person can be sentenced to confinement."

that he was not entitled to counsel. While this does seem to cover all the bases, it does little to overcome this finding as being arbitrary and capricious and contrary to law.

In the same paragraph the A.B.C.M.R. states, "There is no indication that the applicant was coerced or that his rights were violated during the discharge process." Since the applicant was not entitled to legal counsel, what were these rights the A.B.C.M.R. speaks of? The Plaintiff is still ignorant of any rights that were afforded, available, or provided during the discharge process. As far as coercion, the Plaintiff was threatened with prison, a discharge even more onerous than the Undesirable Discharge he received, and a federal conviction on his record, if he did not sign the waiver. This does not even begin to examine the mental and physical coercion that occurred during the 1970 – 71 Fort Dix Special Processing Detachment. And it does not take into account the coercive effects of the service-connected disabilities that were untreated by the Defendant during the process. These too were coercive. To say that the applicant's rights were not violated can possibly be construed as true as the applicant did not have any rights that could be perceived in this process. But to state that there was no coercion is not true. There was coercion, and it may be found, in part, in the waiver signed by the Plaintiff. Such statements are again arbitrary and capricious and not in accordance with the law because they fail to address the reality of the situation.

Paragraph 2 contains one final contradiction. It states, "The evidence of record shows the applicant's attorney properly advised him of the consequences associated with being court martialed and with the consequences of requesting a Chapter 10 discharge in lieu of trial by court martial." First, it would be a stretch to try to construe the actions of Capt. Cowart as being an "attorney." As described above, the Defendant argues that the

Plaintiff was not entitled to an attorney, and none was provided. Capt. Cowart simply explained the threat being made against the Plaintiff and where, in the waiver form, to sign his name in order to suffer the least of the consequences being offered. While in the beginning of the paragraph, the A.B.C.M.R. states that there was no coercion, and then in the final sentence it describes exactly how the coercion was applied. Again, arbitrary, capricious, contrary to law and an abuse of discretion.

Paragraph 3 of page 4 describes the signing of the waiver by the Plaintiff as a voluntary request. The evidence of record shows that the request was not voluntary, that it was coerced, obtained by threats and intimidation, by the withholding of medical treatment and by inhumane conditions and the denial of constitutional rights. All of these factors were addressed in depth in Plaintiff's Reply Memorandum to Defendant's Motion to Dismiss, etc., and will not be restated here. Such a bald conclusion by the A.B.C.M.R. shows that it's denial was arbitrary, capricious, contrary to law and fact, and an abuse of discretion.

Para 4. of Page 4 indicates that the Army did not have the opportunity to help the Plaintiff when he returned from Vietnam, which would suggest that it would have if it only had the opportunity. The Plaintiff has explained that the Plaintiff sought help from the Army but none was forthcoming in his Reply Memorandum to Defendant's Motion to Dismiss, etc., and will not be restated here. What is apparent here is that if anyone had taken the most meager interest in the Plaintiff's situation at the time, there was every opportunity to provide the required assistance, but they did not. Para. 7 of Page 3 of the decisional document outlines a course of action that *could have* been followed but was not. The same effort would have been required to follow this course, and process the

Plaintiff for a medical discharge, as had been followed to stigmatize and punish the Plaintiff with an Undesirable discharge and its attendant effects. This statement is not genuine.

Paragraph 5 of page 4 is the most confusing of all. It states:

> "The evidence of record shows the VA has now diagnosed the applicant with PTSD <u>and related it to his Vietnam service</u>. Although the VA related his PTSD to his Vietnam service, there is <u>no indication in his military records that he was suffering from PTSD at the time of his discharge</u> from the military or that it was the reason for his misconduct."

In order for this statement to make any sense at all, the Plaintiff had to have developed PTSD in Vietnam (in 1969), was then completely cured of this in 1970 during the discharge process and his reporting to Ft. Riley, Kansas, and then relapsed immediately after he was discharged in August of 1971. Medical expert testimony in this case will reveal that this is not the course of this disease and will show this bizarre statement for what it is. The Defendant cannot escape the fact that Plaintiff's Vietnam service occurred <u>before</u> he was discharged. They admit so much in their statement, but then go on to rely on the suspect military records (which if the separating command had <u>really</u> had they would have known that the plaintiff had been to Vietnam) to say that the plaintiff was *not* suffering from PTSD at the time of his discharge, which occurred about a year later. As for the relation of the service connected disability to the reason for the alleged misconduct, the plaintiff will introduce expert medical testimony to show the correlation between the avoidance component of full blown PTSD with an individual's diminished capability to subject themselves to further trauma.

Such a bizarre and self-contradictory statement in its denial is not based upon fact, is arbitrary and capricious, is contrary to law and is an abuse of discretion.

In deciding whether to dismiss this case, or to grant summary judgment to the Defendant, the Plaintiff would remind the Court that he is a Pro-Se Plaintiff and is unschooled in the law. He has done the best he could in drafting these pleadings.

### VII. Conclusion

Based upon the foregoing, the Plaintiff respectfully requests that this Court deny Defendant's "Motion to Dismiss the Complaint, in part" and to deny the Defendant's Motion for Summary Judgment.

Respectfully Submitted,


_____/s/_____
Gilbert Bland, Pro-Se
4725 Dorsey Hall Dr., A504
Ellicott City, MD 21042
(410) 300-6502