UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GILBERT BLAND,<br><br>    Plaintiff,<br><br>  v.<br><br>SECRETARY OF THE ARMY,<br><br>    Defendant. | Civil Action 05-02143 (HHK) |

MEMORANDUM OPINION

By this action, *pro se* plaintiff Gilbert Bland challenges his 1971 Other Than Honorable Discharge from the United States Army, as well as various decisions of the Army Discharge Review Board ("ADRB") and Army Board for Correction of Military Records ("ABCMR") denying his applications to have his Army record corrected and upgraded. Before the court is defendant's motion to dismiss in part and for summary judgment [#8]. Upon consideration of the motion, the opposition thereto, and the record of this case, the court determines that the motion must be granted.

I. BACKGROUND

While Bland was serving in active duty in the Army, multiple court-martial charges were brought against him for the offense of Absent Without Leave ("AWOL"). Facing these charges, Bland requested discharge for the good of the service in lieu of court-martial, pursuant to Army Regulation 635-200, Chapter 10. This request was granted.

In 1974, Bland applied to ADRB to have his discharge upgraded, but his request was denied. He re-applied to ADRB for an upgrade in 1977, pursuant to the Department of Defense's Special Discharge Review Program ("SDRP"). ADRB recommended that his discharge be upgraded (to General, Under Honorable Conditions), but this recommendation was rejected during the SDRP approval process. Another request, in 1982, was also rejected. Bland also applied to ABCMR for relief in 1975, 1978, 2000, and 2003. Each of these applications was denied.

The Secretary has filed a motion to dismiss and for summary judgment, arguing (1) that Bland's claims regarding the underlying discharge, as well as those regarding his pre-2000 review and upgrade petitions, are barred by the statute of limitations applicable to suits against the federal government; (2) that Bland is not entitled to mandamus relief; and (3) that summary judgment is warranted because the 2000 and 2004 decisions of ABCMR were not arbitrary and capricious.

## II. ANALYSIS

**A.    Standard of Review**

This court's ability to review matters related to military discharges is limited, as military personnel decisions themselves lie outside the court's jurisdiction. *Piersall v. Winter*, 435 F.3d 319, 321–22 (D.C. Cir. 2006) (claims for retroactive promotion are nonjusticiable); *Kreis v. Sec'y of the Air Force*, 406 F.3d 684, 686 (D.C. Cir. 2005) ("*Kreis III*"). The court does have jurisdiction, however, "to evaluate, in light of familiar principles of administrative law, the reasonableness of the Secretary's decision not to take certain corrective action with respect to [military records]." *Ibid.* (quoting *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1511 (D.C.

Cir. 1989) ("*Kreis I*")). Pursuant to such a review, the court may only "determine whether the Secretary's decision making process was deficient, not whether his decision was correct," *ibid.*, and the decision must be upheld unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," *ibid.* (quoting 5 U.S.C. § 706(2)(A)). Thus, as with traditional review of administrative agency actions, the court will not disturb the decision so long as the deciding body "examine[d] the relevant data and articulate[d] a satsifactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Ibid.* (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983)). Agency findings of fact are reviewed for "substantial evidence." *JSG Trading Corp. v. Dep't of Agric.*, 235 F.3d 608, 611 (D.C. Cir. 2001) (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion when taking into account whatever in the record fairly detracts from its weight" (internal quotation marks omitted)); *FPL Energy Maine Hydro LLC v. F.E.R.C.*, 287 F.3d 1151, 1160 (D.C. Cir. 2002) ("The 'substantial evidence' standard requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence."). Finally, though judicial review of military records-correction decisions incorporates the core "arbitrary or capricious" standard of traditional administrative law, such review involves an "unusually deferential application" of that standard. *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000) (quoting *Kreis I*, 866 F.2d at 1514). "This deferential standard is calculated to ensure that the courts do not become a forum for appeals by every soldier dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its area of competence." *Ibid.* (citing *Orloff v. Willoughby*,

345 U.S. 83, 94 (1953) ("Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters.").[1]

**B.     Statute of Limitations**

As Bland readily concedes, the six-year statute of limitations applicable to suits against the United States government bars him from challenging many of the decisions regarding his military record. *See* 28 U.S.C. § 2401(a); *Calhoun v. Lehman*, 725 F.2d 115, 116 (D.C. Cir. 1983); Pl.'s Surreply at 7.[2]  His complaint was timely filed only as to the 2000 and 2003 applications to ABCMR, and to the extent equitable tolling of the statutory deadline might theoretically be available for his previous records requests, *see Spannaus v. U.S. Dep't of Justice*, 824 F.2d 52, 59–61 (D.C. Cir. 1987), Bland has not demonstrated any reason why the statute should be tolled here. Only the final two ABCMR applications, therefore, are properly before the court.

**C.     The Merits**

    **1.     The 2000 ABCMR Decision**

In 2000, Bland applied to have his discharge corrected, from Other Than Honorable to "Honorable or Medical," arguing that he was suffering from depression and post-traumatic stress disorder ("PTSD") when he was AWOL, and that because of these conditions, his decision to be

---

[1] This additional deference does not apply in a case where a plaintiff challenges a records-correction board's "application of a procedural regulation governing its case adjudication process." *Kreis III*, 406 F.3d at 686.

[2] The court commends Bland for ably representing his interests in these proceedings without the assistance of counsel.

absent without leave could not have been willful. Administrative Record ("AR") 288. The Board denied the request. Though the Board recognized that Bland may have in fact suffered from depression and PTSD when he went AWOL, it disagreed that these conditions necessarily meant that his actions were not willful. Citing his ability to obtain employment while AWOL and rejecting the notion that Bland's mental health condition compromised his ability to "distinguish right from wrong and to adhere to the right," the Board concluded that his actions were voluntary. AR 285–86.[3]

Though Bland disclaims in his filings any intent to challenge this decision, it is encompassed by his complaint and he nonetheless raises a series of arguments against its legitimacy in his briefs. Construing Bland's filings generously in light of his *pro se* status, the court will address these arguments rather than deem them abandoned.

Bland contends that the Board erroneously assumed that he had admitted to guilt in his request for a discharge when it wrote that a Chapter 10 discharge request "must include an admission of guilt." AR 284. While Bland's request for discharge did not, in fact, include an admission of guilt, *see* Def.'s Opp'n at 16, the Board's misapprehension of the nature of Chapter 10 discharge requests had no prejudicial effect on its decision. Nor could it have such an effect: the Board's decision was based on the willfulness of Bland's conduct, not on any purported admission of guilt.

Bland further argues that his ability to obtain employment while AWOL does not undermine the severity of his mental illness, as the tranquil, undemanding nature of the

---

[3] The Board also concluded that Bland was not eligible for referral for physical disability processing. AR 286.

employment — caring for and delivering tropical fish — simply underscores his post-Vietnam inability to face the arduous and risky life of a soldier. Pl.'s Opp'n at 10. Bland did not, however, provide any evidence to the Board regarding this point, so the issue was immaterial to the decision and will not be assessed in the first instance by this court. *See Nat'l Wildlife Fed'n v. EPA*, 286 F.3d 554, 562 (D.C. Cir. 2002) (failure to raise issue before agency generally constitutes waiver); *United Transp. Union v. Surface Transp. Bd.*, 114 F.3d 1242, 1244–45 (D.C. Cir. 1997) (claims not presented to the agency may not be made for the first time to the reviewing court).[4]

Viewing the 2000 application denial through the appropriate deferential lens, the court concludes that the denial was not arbitrary, capricious or unsupported by substantial evidence.

### 2.     The 2004 ABCMR Decision

In 2003, Bland sought reconsideration of the 2000 denial of his application to have his records corrected. AR 310–12. As grounds for the petition, he relied on his discovery of additional documents in his Veterans Administration medical file and the D.C. Circuit's decision in *White v. Secretary of the Army*, 878 F.2d 501 (D.C. Cir. 1989). AR 310. ABCMR denied the request.

In his complaint and filings, Bland raises a number of objections to the Board's decision, few of which have anything to do with the newly-submitted medical evidence, with *White*, or

---

[4] Bland admits that he did not raise this issue to the Board, but argues that the nature of his employment "is now properly before the Court" because the *existence* of his employment was raised by the government in its motion to dismiss. Pl.'s Surreply at 17. Bland is wrong to assert that the court is empowered to assess the kind of employment he acquired. Review under the APA is based solely on the record before the government agency, *Commercial Drapery Contractors, Inc. v. United States*, 133 F.3d 1, 7 (D.C. Cir. 1998), and that record contains no evidence regarding the nature of Bland's employment while AWOL. AR 193, 231, 285.

with how either of them should have warranted reconsideration of the Board's decision in 2000. In any event, these challenges do not persuade the court that the 2004 denial was arbitrary or capricious.

First, Bland objects to the Board's statement that "[t]here were many avenues through which the Army could have assisted the applicant prior to his misconduct if he had sought assistance within the system instead of going AWOL on four separate occasions totaling 340 days." AR 308. He contends that he did seek assistance at one point, but that if that effort is not in the record, the documentation must have been destroyed. Pl.'s Opp'n at 43. Even assuming this contention is true, however, it does not render the Board's general observation (that Bland had other options besides going AWOL) arbitrary or unsupported by substantial evidence.

Bland also takes issue with the Board's discussion of when physical disability processing is available to soldiers, arguing that he was eligible for such processing or that the court-martial proceedings should have been abated pursuant to the disability processing regulations. Pl.'s Opp'n at 39. Whether he was eligible or whether the court-martial proceedings should have been abated, of course, are not questions before the court, nor were they presented directly to the Board. The only issue Bland raised in his ABCMR application that is even marginally related to disability processing is his statement that "[i]t is noteworthy that" his status was miscoded as "TRAINEE" on a single post-separation report issued by the Army. AR 313. He did not request that this designation be corrected, nor did he connect it in any way with the underlying issues regarding the discharge request. The Board did not act arbitrarily in failing to address it.

Bland further argues that his decision to request a discharge was coerced. This, too, was not an issue raised to the ABCMR, but the Board nonetheless reviewed the nature of his interactions with counsel and determined that the request was not coerced, and that Bland was not misadvised by counsel regarding his rights. This conclusion is supported by the evidence. Bland, who had no fundamental right to legal assistance during the discharge request process, was accurately advised that he faced court-martial charges that could, if proved, lead to a Dishonorable or Bad Conduct discharge. AR 93.[5] He was likewise accurately advised that he could make a voluntary request for an Other Than Honorable discharge, which option he accepted. Any aspect of the proceedings which may have been coercive arose less from the

---

[5] In his application to the Board, Bland contended that he was misadvised by counsel — or, more properly, by a form which the attorney advising him signed — that he faced the possibility of either a Dishonorable or Band Conduct discharge, when, in fact, the special court martial to which he was referred was only empowered to direct the issuance of a Bad Conduct discharge. AR 314; *see also* AR 74, 80; 10 U.S.C. § 818 (general courts martial authorized to issue Dishonorable discharges); *id.* § 819 (special courts martial authorized to issue Bad Conduct discharges, but not Dishonorable discharges). The Board rejected this argument without elaboration and Bland does not challenge this rejection in his complaint or briefs. In any event, the argument is not persuasive. While early charge sheets designate the referrals to special courts martial, the ultimate, cumulative charge sheet (the one which covered all the AWOL charges and which Bland was facing when he made his discharge request) did not specify a special court martial. AR 74, 80, 87. And as Bland himself admits, his charges were not referred to any court-martial proceedings, general or special (he requested discharge before a referral took place). Pl.'s Surreply at 21. The record does not, therefore, support the conclusion that Bland faced only the possibility of a special court martial.
    Bland also argued in his application that there is no evidence in the record that a court reporter was ever assigned to the contemplated court martial, thus "nullif[ying] the discharge itself." AR 314. He also fails to raise this issue in his briefs. Even if he had, this argument is likewise unpersuasive. The proceedings were never commenced, so it is both unsurprising and irrelevant that there is no evidence on the record regarding the assignment of a court reporter.

options offered to him, or the manner in which they were offered, than from his own actions that gave rise to the court-martial charges themselves.[6]

Next, Bland challenges language used by the Board to describe the evidence that he suffered from PTSD. In one section, the Board writes that "there is no record which shows the applicant had a history of PTSD." AR 307. In another, it writes that "there is no indication in his military records that he was suffering from PTSD at the time of his discharge from the military or that it was the reason for his misconduct." AR 309. Predictably, Bland points to evidence in the record that he does, in fact, have a history of PTSD, dating back to his return from Vietnam, and argues that the Board arbitrarily ignored this evidence. More importantly, Bland notes that his military records from his period of service could not have contained a diagnostic history of PTSD, as the condition had not yet been identified as a mental disease at that time. On these points, the court agrees with Bland. The absence of evidence of a PTSD diagnosis in his military records is meaningless. The Board's use of sloppy language, however, does not render its ultimate decision unsupported by the record. The crucial determination made by the Board was not its statement that evidence that Bland suffered from PTSD was absent from the record, but rather its conclusion that, based on its review of all the evidence, including the newly discovered medical files, his PTSD was not — or at least was not solely or sufficiently — the reason for his conduct. AR 308. As to this point, the court cannot say, granting all due deference, that the

---

[6] Bland also objects to the general, boilerplate nature of the language the Board used to articulate its conclusion, but the mere fact that the Board's language was similar to that used in prior rejections of his records requests is hardly reason, standing alone, for a court to deem that conclusion arbitrary. The court recognizes that in some instances, the use of boilerplate language could give rise to an inference of arbitrary agency action. This, however, is not such a case. The record shows that ABCMR gave Bland's petition individualized, direct, and meaningful consideration.

Board acted arbitrarily. Though PTSD undoubtedly diminished Bland's capacity to fulfill his obligations to the military, substantial evidence supports the conclusion that his condition did not so eviscerate his capacity as to render either his AWOL status or his discharge request less than volitional. Nor, therefore, can the court say the Board's refusal to excuse these choices warrants judicial intervention.

Finally, Bland argues that the Board misinterpreted the D.C. Circuit's decision in *White*. In that case, Richard White, an Army serviceman, faced a special court martial for various infractions, including multiple AWOL charges, and requested (and received) an Undesirable discharge. 878 F.2d at 502.[7] In a suit challenging the ABCMR's refusal to upgrade his petition, he argued that he was given erroneous advice by military counsel when he was told he "would undoubtedly receive a dishonorable or a bad conduct discharge." *Ibid.* In fact, the special court martial he faced (for which a court reporter was specifically not authorized) was not empowered to issue either type of discharge. *Id.* at 503–04; *see also* n.5, *supra*. The court deemed the Board's refusal arbitrary and capricious and ordered that the plaintiff's discharge be upgraded to honorable. *White*, 878 F.2d at 506.

Here, the Board attempted to distinguish *White* by stating that "[s]ince the applicant was not court-martialed, the decision in *White v. Secretary of the Army* does not apply to this case." AR 308. In so doing, the Board erred in failing to recognized that neither Bland nor White were court-martialed. This error is of no matter, however, because this case and *White* are distinguishable on the merits: unlike White, Bland was not given erroneous advice, since he *did*

---

[7] After White was discharge but before Bland's separation, the name "undesirable discharge" was changed to "discharge under other than honorable conditions." *White*, 878 F.2d 503 n.6.

face the possibility of either a Bad Conduct or a Dishonorable discharge.  *See* n.6, *supra*.  Though the Board erred in construing *White*, the case is nonetheless inapplicable to Bland's petition, and the error was therefore harmless.

### III.  CONCLUSION

The 2000 and 2004 ABCMR decisions, though flawed, were not arbitrary or capricious and should not be disturbed by judicial intervention.[8]  The court therefore grants summary judgment in favor of the Secretary.  An appropriate order accompanies this memorandum.

Henry H. Kennedy, Jr.
United States District Judge

Dated: March 23, 2007

---

[8] Because Bland is entitled to and has received APA review of the petition denials, and because he has not shown a clear right to the relief he seeks, he is not entitled to mandamus relief.  *See Levant v. Roche*, 384 F. Supp. 2d 262, 271 (D.D.C. 2005).